## MONTGOMERY v. BROWN ET AL.

[No. 16,588. Filed June 19, 1940. Rehearing denied March 3, 1941. Transfer denied April 7, 1941.]

*Clarence F. Merrell* and *Slaymaker, Merrell & Locke,* all of Indianapolis, for appellant.

*Francis J. Dorsey* and *McAleer, Dorsey, Travis & Young,* all of Hammond, for appellees.

DEVOSS, J.—This is an appeal from an award of compensation made by the full Industrial Board to appellees as the surviving dependents of one Gerald Brown, who was alleged to have suffered an accident arising out of

and in the course of his employment, resulting in his death.

The full board made a finding and award favorable to appellees, and so much of said finding and award as is pertinent to this appeal is as follows:

"And the Full Industrial Board, having heard the argument of counsel, having reviewed the evidence and being duly advised therein, now finds that on June 10, 1939, while in the employ of the defendant at an average weekly wage of $15.39, one Gerald Brown suffered an injury as the result of an accident arising out of and in the course of his employment, of which the defendant had k owledge; that the accidental injury resulted in the death of the said Gerald Brown on the same day; that at the time of his death the said Gerald Brown was living with Lela Brown, his wife, and Dennis Brown, a son, both at home and wholly dependent upon the said Gerald Brown for support; that on August 10, 1939, plaintiffs filed their application for the adjustment of a claim for compensation.

"And the Full Industrial Board now finds for plaintiffs on their application, that the death of the said Gerald Brown was due to an accidental injury arising out of and in the course of his employment.

"It is further found that defendant has not paid the statutory $150.00 funeral expenses.

### "AWARD

"It is therefore considered and ordered by the Full Industrial Board of Indiana that there is awarded plaintiffs as against defendant compensation at the rate of $8.80 per week beginning on June 10, 1939, during the period of their dependency, but not exceeding 300 weeks as to time."

Appellant assigns as error for reversal that the award of the full Industrial Board is contrary to law, and the only contention made by appellant to support this assigned error is, that the accident resulting in the

death of Gerald Brown did not arise out of his employment by appellant.

There is no material conflict in the evidence and the substance thereof is as follows: Appellant herein was engaged in the grain and farm implement business each conducted in a separate location, being about a city block apart. Gerald Brown, appellees' decedent, was a general employee and worked wherever needed in both of said lines of business for appellant. On June 10, 1939, he had been working at the grain elevator and between two and three o'clock p. m. of that day he unloaded a truck-load of oats at the elevator. Upon the completion of unloading the load of oats, he drove on the scales and was informed by Catherine Montgomery, wife of appellant, who was in charge of the business at the elevator, that it looked as if there was a storm coming up; whereupon appellees' decedent stated that he was going to put the truck away, it being his regular duty to take care of the truck and put it away. Immediately prior to this time a very black cloud was coming from the west, and apparently there was a storm coming on. Appellant saw the storm coming and had locked both the front and rear doors of the farm implement building where the truck was kept just prior to the time the storm broke, and went to the elevator.

After the storm, some time between three and four o'clock p. m., it was discovered that a considerable portion of the north wall and a part of the west wall of the building occupied by appellant as a farm implement building had fallen, as a consequence of the windstorm. Decedent's body was discovered under the cement blocks of the north wall which had fallen, approximately ten feet from the rear end of the building. The truck was

found outside the rear of the building, faced to go into the building.

According to the record, other buildings in the vicinity suffered slight damage from the storm; but the building occupied by appellant as an implement store was the only one which in any part collapsed. Appellant's wife, who supervised appellant's employees, stated, subsequent to the discovery of the body under the wall, that if she "hadn't sent Buddy (appellees' decedent) out it might not have happened."

No one saw appellees' decedent after he drove away from the elevator, but in response to a question appellant stated:

"Q. And do you know who put the truck there?
"A. No I don't. I didn't see Mr. Brown put it there, but he was the last man in it and evidently he drove the truck up there."

Appellant further testified as follows:

"Q. And if he did drive the truck up there it would be necessary for him then to go around from the rear to the front of the building?
"A. That's right.
"Q. And would he have to go around one side of that building?
"A. Around there or go south approximately a block to get around. The natural way would be to go around to the north side of the building. We had a walk around there, a beaten path, not a regular walk, that's the way we all traveled to the front of the building.
"Q. That was the general custom of all?
"A. That was the general custom."

All facts necessary to sustain the award, except the fact that the accidental injury arose out of the employment, were stipulated by the parties.

It is contended by appellant that the injury, resulting in the death of appellees' decedent, was the result of

an act of God; and that it did not arise out of his employment, and therefore appellant, as his employer, is not liable for such injury and death.

The matter involved presents a legal question upon the application of which the different jurisdictions do not fully agree. However, the words "by accident arising out of and in the course of the employment" have been considered by this court on a number of occasions and the meaning of the phrase "arise out of the employment" was defined in the case of *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 555, 132 N. E. 664, in the following language:

> "An accident is said to arise out of the employment when there is a causal connection between it and the performance of some service of the employment. The causal relation is established when the accident is shown to have arisen out of a risk which a reasonable person might have comprehended as incidental to the employment at the time of entering into it, or when the evidence shows an incidental connection between the conditions under which the employe works and his resulting injury."

As to when an accident is "incidental" to the employment, this court said in *In re Harraden* (1917), 66 Ind. App. 298, 304, 118 N. E. 142:

> "Where the employment of the injured person requires him to be at the place where his injury is received, and he is in fact at such place in pursuance of the discharge of the duties of his employment, the risk thereby encountered is held to be incident to such employment, though the injury may have resulted from conditions produced by the weather to which *persons generally in that locality were exposed.*" (Our italics.)

The fact that death or injury resulted from an act of God does not of itself preclude a recovery under our Workmen's Compensation Law. It must further ■ appear that such injured employee experienced no greater hazard by reason of his employment than other members of the general public not so engaged experienced at the time and place of such injury, and the standard of test is: Did the employment increase the danger?

Death by lightning is considered to be death by an act of God, yet, in considering the question as to whether the same is compensable, many courts have held that when the workman, by reason of his employment, is more exposed to injury by lightning than are others in the same locality and not so engaged, the injury may be said to arise out of the employment. *State ex rel.* v. *District Court* (1915), 129 Minn. 502, 153 N. W. 119; *Aetna Life Ins. Co.* v. *Industrial Com.* (1927), 81 Colo. 233, 254 P. 995; *De Luca* v. *Park Commissioners* (1919), 94 Conn. 7, 107 A. 611; *United States Fidelity & Guaranty Co.* v. *Rochester* (1926), 281 S. W. (Texas) 306; *Matter of Madura* v. *City of New York* (1924), 238 N. Y. 214, 144 N. E. 505; *Emmick* v. *Hanrahan Brick & Ice Co.* (1923), 206 App. Div. 580, 201 N. Y. Supp. 637.

The difficulty, however, does not arise so much from a determination of a proper definition of the clause under consideration as it does from an application of the same to a given state of facts. In this connection it has been frequently said that each case must be determined from a consideration of its own facts and circumstances.

In the determination of the question involved herein, this court will indulge in the doctrine heretofore ex-

pressed numerous times, that the Workmen's ■ Compensation Law should be given a broad and liberal construction in order that the humane purposes for which it was enacted may be realized.

The case of *American Shipbuilding Co.* v. *Michalski* (1928), decided by the Court of Appeals of Ohio, and reported in 30 Ohio App. 80, 164 N. E. 123, is a case somewhat similar to the instant case. One Joseph Michalski was employed by the American Shipbuilding Company as a fireman and was working in the powerhouse at a time when a tornado passed over the plant. As the wind began to blow, he was instructed by the foreman to close one of the doors to the building; and while he was attempting to close the door, the wind blew out a portion of the side of the building where he was sent to close the door; and later he was found dead two hundred feet away from the building. The tornado caused the death of more than seventy persons in the vicinity and great property damage. In passing upon the question as to whether the death of said Michalski was compensable under the Workmen's Compensation Act of Ohio, the court said (30 Ohio App. 80, 83, 164 N. E. 123, 124):

> "We hold that where, during a tornado, an employee, by specific order of the master, is directed to go to a place of increased danger for the purpose of preserving the master's property, and while obeying such order is injured by such tornado, such injury constitutes an accident arising out of his employment, within the meaning of the Workmen's Compensation Act, and that the trial court reached the correct conclusion in this case when compensation was awarded."

The Supreme Court of Louisiana has given its interpretation of the phrase "arise out of his employment" in the case of *Kern* v. *Southport Mill* (1932), 174 La. 431, 438, 141 So. 19, 21, as follows:

"And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business *called him there,* the injuries he may suffer by reason of such accident 'arise out of' *the necessity* which brought him there, and hence 'arise out of' his employment, if it so be that he was *employed* and his employment required him to be at the place of the accident at the time when the accident occurred."

The case of *Central Ill. Public Service Co.* v. *Industrial Commission* (1920), 291 Ill. 256, 265, 126 N. E. 144, is a windstorm case. However, the circumstances surrounding the injury are not similar to the instant case, but the court in affirming the award also interpreted the rule as follows (126 N. E. 144, 147) :

"We believe the reasonable rule to be that if deceased, by reason of his employment, was exposed to a risk of being injured by a storm which was greater than the risk to which the public in that vicinity was subject, or if his employment necessarily accentuated the natural hazard from the storm, which increased hazard contributed to the injury, it was an injury arising out of the employment, although unexpected and unusual. An injury, to come within the Compensation Act (Laws 1913, p. 335), need not be an anticipated one, nor, in general, need it be one peculiar to the particular employment in which one is engaged at the time. While the risk arising from the action of the elements, such as a cyclone, is such a risk as all people of the same locality are subjected to, independent of employment, yet the circumstances of a particular employment may make the danger of receiving a particular injury through such storm an exceptional risk, and one to which the public generally is not subjected. Such injury may be then said to arise out of the employment. . . ."

Other cases are cited in the opinion which discuss the rule and the application thereof.

As stated hereinbefore, there is not much question as to the interpretation of the rule but the difficulty arises in applying the rule to the facts.

We think the controlling factor in the instant case is that appellees' decedent was, by the order of his employer, directed to go to a place of increased danger for the purpose of housing the employer's truck, and that while so doing he was killed. The record discloses that the decedent after unloading the truck-load of oats was informed by Catherine Montgomery, wife of appellant, who was in charge of the business, that it looked as if there was a storm coming up, and that decedent said he was going to put the truck away. The record does not disclose any specific order by said Catherine Montgomery to decedent relative to putting the truck away, but the witness Lela Brown in answer to a question testified as follows:

"Q. So what did Mrs. Montgomery say? Go ahead.

"A. She told my mother-in-law that she was sorry, and she, I don't know, under the strain of emotion or something, she said 'if only she hadn't sent Buddy out it might not have happened.'

"Q. You say if she had not sent Buddy out, do you know who she had reference to?

"A. Yes.

"Q. Who?

"A. My husband."

The Industrial Board and this court are warranted under the evidence in assuming that there was some responsibility upon Catherine Montgomery for the actions of decedent in the putting away of the truck. When she was informed by decedent that he intended to put the truck away, the record does not disclose that decedent was instructed to do otherwise.

When the storm approached, we find the decedent at the elevator scales adjacent to the office of appellant, a place of safety, as evidenced by the fact that no dam-

age was suffered at the elevator office except a pane of glass being blown out. The evidence further discloses that Catherine Montgomery "thought it was a terrific storm and got everything in order so if anything should happen." The decedent, if not under a specific direction, at least with the consent of appellant, for the purpose of protecting appellant's property, proceeded to run the truck back to the garage; and, for the purpose of unlocking the door to admit the truck, made his way around the building on the only direct route available; and thereby placed himself near the wall which collapsed by reason of the storm. These facts in our opinion bring this case within the rules laid down in the case of *In re Harraden, supra,* and also the rule as stated in the case of *American Shipbuilding Company* v. *Michalski, supra.*

We cannot arrive at any other conclusion but that the hazard to decedent was increased by his effort to put the truck in the garage, and that he was subjected thereby to a greater risk than other persons exposed to the storm in that vicinity, and that there was a causal relation between the employment and the injury. The record does not disclose any serious injuries to persons other than decedent, neither does it disclose any serious damage to property other than the one by which decedent met his death.

One witness testified that he sat in his automobile, in the vicinity of the elevator, during the storm and suffered no injuries therefrom.

The award of the Industrial Board is not contrary to law, and no reversible error appearing in the record, the award of the board is affirmed; and by virtue of the statute the amount thereof is increased five per cent.

Bridwell, C. J., dissenting.

NOTE.—Reported in 27 N. E. (2d) 884.