BURROUGHS ADDING MACHINE COMPANY *v.* DEHN.

[No. 16,832. Filed February 13, 1942,]

484

*Joseph A. Wicker* and *White, Wright & Boleman*, all of Indianapolis, for appellant.

*Anderson, Mayfield, Wilhite & Moberly*, of Indianapolis, for appellee.

BEDWELL, P. J.—On the 26th day of December, 1940, the appellee, Ray J. Dehn, was temporarily totally disabled while performing duties that he was employed by the appellant, Burroughs Adding Machine Company, to perform. The hearing member and a majority of the full Industrial Board awarded him compensation.

The sole question for determination by the Industrial Board was whether the disability of appellee, which without question occurred "in the course of his employment," was the result of "an injury by accident arising out of his employment." The sole questions for our determination are whether there exists in the record any evidence from which the Industrial Board could properly have determined that the disability of appellee was the result of an injury by "accident"; and, if such is answered in the affirmative, that such injury by accident "arose out of the employment."

The appellee was the only witness that testified at the trial of the cause. His evidence disclosed, that on the date of his injury, he was employed by appellant as a sales supervisor and that the duties of his employment required him to make business calls at various firms to sell appellant's products; that on such date, which was December 26, 1940, at about 12:30 o'clock at noon, he was walking west on the south side of Maryland street between Pennsylvania street and Meridian street and at the side of the Big Four Building, all in the City of Indianapolis, Indiana, for the purpose of making a business call at the Peerless Electric Company on South Meridian street in such city. That while so located, he received an injury to the right side of his head, about three inches above the ear, and that his skull was fractured thereby; that he was rendered unconscious and has no remembrance concerning the particular events connected with the injury. The following questions and answers by appellee at the trial before the hearing member of the Industrial Board are shown by the record:

"Q. State if you can what caused your injury?
"A. It is pretty hard to say. The best that I can judge some something must have fallen off of the building, or out of the building, Big Four Build-

ing, or a stone was kicked up from a passing car or truck.

"Q. You do not know definitely what caused your injury?

"A. Absolutely not."

Upon cross-examination, when appellee was questioned concerning the cause of his injury, the questions and answers are as follows:

"Q. Now, Mr. Dehn, you were asked what caused you to fall on this side-walk, and you testified that you thought something fell, or a stone was kicked up by a passing car, now, have you anything to base that on except your conjecture, or your possibility?

"A. No, sir. The other people, as I understand, that saw me laying there, that, they assumed someway the same.

"Q. Were you able to find anyone at all who saw anything like that occur?

"A. No, sir.

. . .

"Q. Now, you as a matter of fact, you don't know at all what caused you to fall?

"A. No, sir.

"Q. You can't say whether you were struck by anything, or whether you fainted, or anything of that kind. As a matter of fact, you simply don't know?

"A. I was in good health walking along the street with all my faculties, made several business calls in the morning, and the next thing I come to in the hospital in the afternoon, late in the afternoon.

"Q. Was the side-walk crowded at that time?

"A. I don't recall of it being excessively crowded.

"Q. You have no recollection of anyone bumping into you?

"A. Naturally not, no, sir.

"Q. You have no recollection of slipping, or stumbling?

"A. No, sir.

"Q. You have no definite recollection of anything striking you?

"A. Naturally not, sir, no.

"Q. You have no recollection of fainting, or suffering any attack, or illness, or anything of that nature?

"A. No, sir.

"Q. So the fact is you don't know at all what caused you to fall. That is the substance of it?

"A. No, sir.

"Q. And this injury you had, this fractured skull, you don't know whether that was sustained before, or when you struck the side-walk?

"A. Naturally not. I was unconscious, and I couldn't say.

. . .

"Q. Have you ever fallen in that manner before?

"A. Never, sir.

"Q. Ever suffered any fainting spells that caused you to fall, or attacks that caused you to fall before?

"A. No, sir, I have always been in the best of health."

Section 2 of our Workmen's Compensation Act (Acts 1929, ch. 172, § 2, p. 536; Acts of 1937, ch. 214, § 7, p. 1067; § 40-1202, Burns' 1940 Replacement; § 16378, Baldwin's Supp. 1937), provides that, "every employer and every employee, except as herein stated, shall be presumed to have accepted the provisions of this act respectively to pay and accept compensation for personal injury or death *by accident arising out of and in the course of the employment and shall be bound thereby;* . . . ." (Our italics.)

While this language is simple and apparently plain in meaning, the judicial construction and interpretation thereof has been such that it is most difficult to determine whether certain injuries were the result of "acci-

dent" or whether they "arose out of" the employment of the injured workman. Workmen's compensation laws are now in force in forty-six states and in Alaska, Porto Rico, District of Columbia, and Hawaii. In addition there is a Federal Compensation Act applying to civil employees of the government and to soldiers and sailors and an act which covers maritime employments. The compensation acts of North Dakota, Pennsylvania, Texas, and Washington cover injuries incurred "in the course of the employment." The Wisconsin act covers injuries sustained in performing services growing out of and incidental to the employment. The Utah act covers injuries "arising out of *or* in the course of the employment." All the other acts—although a few use different phraseology—cover only injuries "arising out of *and* in the course of the employment." The majority of the compensation acts, by their terms, cover only "injuries by accident"; but the acts of California, Iowa, and Massachusetts cover "injuries" indefinitely. The Wisconsin act covers mental or physical harm caused by accident or disease.

The word "accident" used in our Workmen's Compensation Act is used in its popular sense, and means "any unlooked for mishap or untoward event not expected or designed." *Haskell etc., Car Co.* v. *Brown* (1918), 67 Ind. App. 178, 117 N. E. 555; *Indian Creek Coal, etc., Co.* v. *Calvert* (1918), 68 Ind. App. 474, 119 N. E. 519, 120 N.E. 709; *Board of Commissioners of Greene Co.* v. *Shertzer* (1920), 73 Ind. App. 589, 127 N. E. 843; *Stacey Brothers Gas Constr. Co.* v. *Massey* (1931), 92 Ind. App. 348, 175 N. E. 368; *General Printing Corp.* v. *Umback, Admx.* (1935), 100 Ind. App. 285, 195 N. E. 281; *Cunnningham* v. *Warner Gear Co.* (1935), 101 Ind. App. 220, 198 N. E. 808; *Studebaker Corp.* v. *Jones* (1937), 104 Ind. App.

270, 10 N. E. (2d) 747; *American Maize Products Co.* v. *Nichiporchik* (1940), 108 Ind. App. 502, 29 N. E. (2d) 801.

In the case of *Board of Commissioners of Greene Co.* v. *Shertzer, supra,* the workman, who was a painter and paperhanger, was employed by appellant to do some papering and painting at the county poor asylum. A few minutes after he had eaten a hearty meal, and while doing such work, he fell from a ladder, upon which he was standing, to the floor of the room; and as a result of the injuries thus received he died ten days later. When asked how he came to fall, he replied that he "became dizzy, and seemed to be going round and round." The physician who attended him stated that dizziness such as was complained of by Shertzer, might have been the result of eating an excessive meal. This court held that if it was conceded that Shertzer's fall was the result of vertigo, it does not necessarily follow that the cause of his death was the disease; and that the question of whether or not the death of the employee was the result of an accident arising out of his employment was a question for the Industrial Board.

In *Miller* v. *Beil* (1921), 75 Ind. App. 13, 129 N. E. 493, it was necessary for a workman, employed to haul water in a water tank drawn by horses, to stand on the top of the tank, which was seven and one-half feet long, three feet wide, and twenty-eight inches deep, with an opening in the top twenty-three inches square, to fill the same with water by a pump. The lifeless body of the workman was found in the tank a short time after he had gone, in the course of his employment, to get water. The employee who thus lost his life was subject to epilepsy. This court held that the question of whether or not the death of the employee was a

result of an accident arising out of his employment, was a question of fact for the Industrial Board. In the course of its opinion, the court says at p. 14:

"There is no direct evidence that appellees' decedent fell in the tank as a result of an epileptic fit, and we cannot say that the Industrial Board found that appellees' decedent, at the time of his death, fell as a result of the disease of epilepsy. There is authority, however, which would support the award even if the board had so found."

We hold that the evidence was sufficient to sustain the finding of the Industrial Board that the ■ injury of appellee was the result of an accident.

This leaves for determination the question of whether the injury "arose out of" the employment of appellee.

Speaking generally, an injury arises out of the ■ employment when there exists a causal connection between it and the employment, or, expressing the same idea in different form, when the employment is in some way responsible for the injury. It is upon this principle of industrial responsibility that the compensation acts find their theoretical and constitutional basis.

In the case of *Cudahy Co.* v. *Parramore* (1923), 263 U. S. 418, 423, 44 S. C. 153, 154, 68 L. Ed. 366, 369, the court in the course of its opinion says:

"It may be assumed that where an accident is in no manner related to the employment, an attempt to make the employer liable would be so clearly unreasonable and arbitrary as to subject it to the ban of the Constitution; . . . ."

This principle that there must be some relationship between the employment and the injury is emphasized by the courts, in their opinions, in two different ways. In some opinions the factor of causation is stressed.

An example is the oft quoted case of *McNicol's Case* (1913), 215 Mass. 497, 499, 102 N. E. 697, L. R. A. 1916A, 306, 307, 4 N. C. C. A. 522, 523, in which the court says that an injury, " *'arises out of'* the employment, when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." (Our italics.) Also, the following cases where this court laid down the rule that an injury by accident *arises out of* the employment when there is a causal connection between it and the performance of some service of the employment: *In Re Harraden* (1917), 66 Ind. App. 298, 304, 118 N. E. 142; *Empire Health, etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 555, 132 N. E. 664; *Williams* v. *School City of Winchester* (1937), 104 Ind. App. 83, 90, 96, 10 N. E. (2d) 314. But other cases stress the concept of a hazard of the industry, of a risk connected with and incidental to the employment; and so they say an accident arises out of the employment when it is something, the risk of which might have been contemplated by a reasonable person when entering the employment, as incidental to it. Or, that a risk is incidental to the employment when it belongs to or is connected with what a workman has to do in fulfilling his contract of service.

Other cases, emphasizing the risk, lay down the rule that the employer is not liable for injuries from risks that are not incidental to the employment but common to the general public. When the courts announce as a general principle that there must be some causal connection between the injury and the employment, the statement of the general principle is of but little, if any, value in determining whether liability exists in a particular case. In one sense, in practically all cases where

a workman is injured in the course of his employment, no matter what may be the source or nature of the act that caused the injury, there is a causal connection between the employment and the injury, for the workman would not have been injured, if he had not been performing the duties of his employment. The great difficulty in all compensation cases is to determine the kind of causation or the degree of causation that is necessary to produce liability. It is doubtful whether any definition or formula can be announced that can be followed with safety. In tort cases we have the rule that liability does not exist unless the negligent act was the proximate cause of the injury, but no reason whatever exists in compensation cases for the announcement of a rule that the employment must be the proximate cause of the injury. One author has stated that: "In compensation law an injury may be said to arise out of the employment, if such employment, in its conditions, its relationships, or its environment in some way causes or occasions the accident, from which the injury of the employee arises." Ray A. Brown in Wisconsin Law Review, Vol. 8, p. 138. But such general definition is of little practical value because of the difference of opinion that will arise in the minds of particular human beings, whether they be members of an industrial board or members of the judiciary, as to whether certain conditions, relationships or environment of the employment caused or occasioned the accident. Admittedly, much will depend upon whether the particular individual upon whom is cast the duty of determination, places a liberal construction upon the phraseology of the statute with a view of carrying out the humane purposes of the act.

While the courts have struggled arduously to determine whether particular accidents "arise out of the employment," and while they have attempted to express

general principles or general formulas as a basis of their determination, it is true that the decided cases are in irreconcilable conflict. As one court, the United States Circuit Court of Appeals, Eighth Circuit, expressed it in *Kansas City Fibre Box Co.* v. *Connell* (1925), 5 F. (2d) 398, 400, "one is lost in a labyrinth of judicial utterance." As Judge Dausman of this court, in a dissenting opinion in *In Re Betts* (1918), 66 Ind. App. 484, 494, 118 N. E. 551, said: "In this respect the reported cases appear to be a jungle of contradictions. We can no more follow them than one can follow all the roads. In every contest it is an easy matter to arrange a long list of cases on either side of the controversy."

It is equally hard to reconcile those cases that stress the "hazard" or "risk" of the industry as the factor in determining whether or not a particular injury arose out of an employment. The phrase, that the hazard or risk must not be one that is common to the community or the neighborhood, has been sometimes employed by our own cases. See *Burk* v. *Shell Petroleum Corporation* (1933), 97 Ind. App. 603, 605, 187 N. E. 685; *Deckard* v. *Trustees of Indiana University* (1931), 92 Ind. App. 192, 196, 172 N. E. 547. In many other cases, compensation has been allowed where it would be denied if such standard was applied. It is hard to see, when an employee slips and falls upon a street because of ice, why the general public traveling the street is not subjected to the same risk. This court held that the injury was one arising out of the employment in such a case. See, *In Re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142.

In the case of *Matter of Heidemann* v. *Am. District Tel. Co.* (1921), 230 N. Y. 305, 308, 130 N. E. 302, 303, Judge Cardozo emphasizes a risk increased by the

nature of the employment as a basis of liability. In this particular case a watchman was accidentally shot by a policeman who was pursuing a marauder, and the court held that the death of the watchman was due to a hazard increased by the nature of the employment. In the course of the opinion Judge Cardozo said:

> "The sudden brawl, the 'chance medley' . . . are dangers of the streets, confronting with steady menace the men who watch while others sleep. Casual and irregular is the risk of the belated traveller, hurrying to his home. Constant, through long hours, was the risk for Heidemann, charged with a duty to seek where others were free to shun. The difference is no less real because a difference of degree. The tourist on his first voyage may go down with the ship if evil winds arise. None the less, in measuring his risk, we do not class him with the sailor for whom the sea becomes a home."

For Indiana cases where the nature of the hazard or risk was emphasized by this court, see *Burk* v. *Shell Petroleum Corp.* (1933), 97 Ind. App. 603, 187 N. E. 685; *Hunt* v. *Gutzwiller Baking Co.* (1937), 104 Ind. App. 209, 9 N. E. (2d) 129; *Short* v. *Kerr* (1937), 104 Ind. App. 118, 9 N. E. (2d) 114; *Kiddie Knead Baking Co.* v. *Bolen* (1939), 106 Ind. App. 131, 17 N. E. (2d) 477; *Montgomery* v. *Brown* (1941), 109 Ind. App. 95, 27 N. E. (2d) 884.

An interesting English decision as to when an injury is "by accident arising out of the employment," is the case of *Dover Navigation Co.* v. *Craig,* decided in the House of Lords on December 13, 1939, and reported in the Law Journal, 1940, Vol. 109 King's B. Div., p. 158. The English decisions are persuasive as precedent because the English Compensation Act, adopted by Parliament on December 21, 1906, provided compensation for injury "by accident arising out of and in the course of the employment"; and the same phraseology,

or modifications thereof, has entered into the American acts which were modeled, in many respects, from the English act.

In the case above referred to, a seaman, employed on a steamship which went to the western coast of Africa and stopped at places where yellow fever mosquitoes were numerous, was bitten by mosquitoes and contracted yellow fever from which he died. The question for determination in the House of Lords was whether the death was one by accident that arose out of the employment. The case was decided for the dependents of the deceased seaman; and the House of Lords determined that the fact that residents in the area were also exposed to the risk of mosquito bites was immaterial, as the workman was so exposed because he was required by his employment so to expose himself. The Lords held that the contracting of yellow fever, through a mosquito bite, was clearly an accident. In the course of his opinion, Lord Wright, at p. 164, says:

". . . The infliction of the bites was an accident. In essence it was the same as if the crew had been assailed by a flight of poisoned arrows aimed at the ship by a raiding party of natives. Taking the facts as they have been found, the claim to compensation appears to be unanswerable on the words of the section, or, indeed, if analogy and authority are also considered, on the decided cases."

And, further, at p. 165:

"The position of a seaman under the Act is in many ways peculiar because his employment may expose him to risks in strange climates outside the limits of this country. In that way such risks are not normal to him but are necessarily incidental to his employment. It is, in my opinion, fallacious to treat as normal to him risks which are normal to the ordinary inhabitant of the place, who is not there because of special employment

like the seaman.  If analogy were needed, it may be pointed out that the boy in *Dennis* v. *White & Co.* (in this particular case a boy who was riding his bicycle on the street in the course of his employment was knocked down and injured) only took the risks which everybody takes who bicycles in the streets, but he was held entitled to compensation because he took those risks on his employer's work.  Mosquito bites on the West African Coast are very unlike a street accident in an English town, but they are analagous in the respect essential to the purposes of this case, that in each case the employee met with the accident because he was sent by his employer to the place where the danger was."

Desirable as it may be that we should have some formula or determinative test to apply to the numerous cases arising under the compensation law, for the purpose of determining whether the particular injury by accident "arose out of" the employment, it must be admitted that the numerous, and sometimes conflicting, formulas and tests heretofore announced are apt to lead to confusion and contradictions instead of clarity. There is not much difficulty in those cases where the causative agencies are a part of the employer's business and under his control.  In all of those cases, it is proper to hold an employer liable no matter how unusual and unpreventable the accident, for the facts will establish to any reasonable mind the causal relationship.  It is in those cases, where the causative agency lies outside the employer's business, where the difficulty arises. Where the causative agent is outside the employer's business, and such agency is not created, employed, or controlled by the employer, it would seem unjust to hold the employer liable for injuries due to such agency unless the business in some way exposed the employee to injury from such agency.

One of the class of cases where, quite often, the accident is not attributable to the act of an employer or of a fellow servant, or to an instrument of the master, is that class of cases where the employee's injury was the result of a fall. Such may have been the case before us for determination. The fall of Dehn may have been the result of exertion because of his walking to perform his duties. It may have been the result of vertigo arising from over-indulgence in food or drink. It may have been the result of some condition of the street along which he was walking, and it may have been caused by some object like a rock or brick striking him on the side of the head. We feel that the Industrial Board could have drawn the reasonable inference that it was not occasioned by any assault by a human agency. The fall occurred in the business section of a large city near noon, when a number of travelers were on the street, and there is no evidence of any assault.

If the evidence had shown clearly that the fall of Dehn was due to the work that he was doing, or to some condition of the street, or to an outside hazard to which he was particularly subjected because of the performance of the duties of his employment, there would be no difficulty in determining that the injury "arose out of" his employment. But where an unexplained fall occurs during the course of the employment, is the Industrial Board entitled to draw the inference that the resultant injury was *prima facie* caused by an accident arising out of the employment? In such cases is the causal relationship between the injury and the employment sufficiently shown by the establishment of the fact that the injury was received in the course of the employment? If the fall of Dehn had occurred when he was not in the course of his employment, he would not be entitled to com-

pensation; and if his injuries were due to acts that he was performing primarily for his own and not for his employer's benefit, under the rule laid down in *In Re Betts, supra,* he would not be entitled to compensation. The facts in this case exclude either of such contingencies. But if the fall of Dehn had been due to a previous physical or mental defect, the accident would have arisen out of the employment if a causative agent, for which the employer was responsible, activated a previous dormant condition, or if such causative agency concurred with such condition to inflict injury. Previous decisions of this court are in accordance with this determination. In the case of *Miller* v. *Beil, supra,* from which we have heretofore quoted, in discussing whether the injury arose out of the employment, this court said at p. 14:

> "The theory of the court in each of these decisions is that an epileptic fit might not have caused injury or death, except for the fact that the work of the employe required him, at the time, to be at the particular place where he fell. It is stated by the court in the Wicks case, above cited, that 'the accident none the less arises out of his employment because its remote cause is to be found in his own (employe's) physical condition.'"

So, in the case under consideration, assuming that Dehn's fall was caused by vertigo, if he had been sitting in a chair at home when the attack occurred, he probably would not have been injured. The fact that he was carrying out the duties of his employment and was walking along the street concurred with his physical condition to produce the injury. Other cases in this jurisdiction, discussing the rules that will be applied in the case of falls of employees, are: *Board of Commissioners of Greene Co.* v. *Shertzer* (1920), 73 Ind. App. 589, 127 N. E. 843; *Owens* v. *McWilliams* (1926),

85 Ind. App. 92, 152 N. E. 841; *Servel, Inc.* v. *Jarred* (1936), 102 Ind. App. 218, 1 N. E. (2d) 657; *Seymour Woolen Mills* v. *Ward* (1935), 100 Ind. App. 108, 192 N. E. 892.

A well considered case in another jurisdiction is that of *Matter of Mausert* v. *Albany Builders' S. Co.* (1928), 250 N. Y. 21, 25, 164 N. E. 729, 730. There the Industrial Board certified certain facts which showed that a teamster, while driving his horses at a walk over a smooth pavement, fell from his wagon seat, and two wheels passed over his body, from which injury he died within three hours. The Industrial Board made no finding in respect to the cause of the fall; and the Appellate Division of the Supreme Court was of the opinion, as was the Court of Appeals, that the cause of the fall was entirely unexplained. The Court of Appeals held that the injury arose out of the employment; and in the course of its opinion, and as the basis of its decision, it says:

> "It is the fall and the injury resulting from it that constitutes an accident within the purview of the statute. The cause may be disregarded and the inquiry limited to an investigation to disclose whether the fall, having occurred, bore with it such consequences as would not have occurred except for the employment. A teamster, suffering from heart disease may sink upon a quantity of straw in the stable. He may be temporarily dazed and immediately recover or he may die from cardiac syncope. Unless his disease was caused by his employment, his death does not arise out of his employment. Another teamster, suffering from the same disease in a form not sufficiently severe to cause him to do more than to slide from his seat to the pavement, breaks his bones or is killed. Then his injury arises out of his employment. If he had not been driving his wagon and fallen to the street he would not have been hurt."

But under the evidence the injury of Dehn may not have been caused by a fall. He may have been struck so that he fell as a result of injury. In such event we can look to that class of cases applicable to street perils or street hazards or risks for a discussion of whether such an injury was an accident that arose out of the employment. Our own cases have allowed compensation where the injury was due to an icy sidewalk or injury from vehicles or street cars or from objects that might be occupying some portion of the street. For such cases see *In re Harraden* (1917), 66 Ind. App. 298, 118 N. E. 142; *Bachman* v. *Waterman* (1918), 68 Ind. App. 580, 121 N. E. 8; *Capital Paper Co.* v. *Conner* (1924), 81 Ind. App. 545, 144 N. E. 474; *Traub* v. *Hance* (1939), 107 Ind. App. 134, 23 N. E. (2d) 293; *Kiddie Knead Baking Co.* v. *Bolen* (1939), 106 Ind. App. 131, 17 N. E. (2d) 477.

In the case of *Kiddie Knead Baking Co.* v. *Bolen, supra,* this court quotes with approval the following from *Empire Health etc., Ins. Co.* v. *Purcell* (1921), 76 Ind. App. 551, 132 N. E. 664:

> " ' "If a servant in the course of his master's business has to pass along the public street, whether it be on foot or on a bicycle, or on an omnibus or car, and he sustains an accident by reason of the risk incidental to the streets, the accident arises out of as well as in the course of his employment." ' "

This quotation came originally from *Dennis* v. *A. J. White & Co.* (1917), 86 Law Journal, K. B. 1074, 1917 App. Cas. (Eng.) 479.

As far as we have been able to determine, this court has not defined what are, "risks incidental to the streets."

In the case of *Matter of Katz* v. *Kadans & Co.* (1922), 232 N. Y. 420, 422, 134 N. E. 330, 331, a dairyman's

chauffeur was delivering some cheese when an insane man stabbed him. A lot of people were running after the insane man and he stabbed any one near him. The question was presented to the Court of Appeals of New York of whether the injuries of the chauffeur arose out of his employment. Such court held that they did and in the course of its opinion said:

". . . The danger must result from the place to make it a street risk, but that is enough if the workman is in the place by reason of his employment, and in the discharge of his duty to his employer. The street becomes a dangerous place when street brawlers, highwaymen, escaping criminals or violent madmen are afoot therein as they sometimes are. The danger of being struck by them by accident is a street risk because it is incident to passing through or being on the street when dangerous characters are abroad.

"Particularly on the crowded streets of a great city, not only do vehicles collide, pavements become out of repair and crowds jostle, but mad or biting dogs may run wild, gunmen may discharge their weapons, police officers may shoot at fugitives fleeing from justice, or other things may happen from which accidental injuries result to people on the streets which are peculiar to the use of the streets and do not commonly happen indoors."

Under the evidence as introduced, we think the Industrial Board could properly have drawn the inference that the injury of appellee was not the intentional act of a responsible human agency so that it would be governed by the rule laid down by this court in *G. W. Opell Co.* v. *Phillips* (1929), 90 Ind. App. 552, 169 N. E. 354.

The evidence before the Industrial Board was such that, in our opinion, the Industrial Board could reasonably have drawn the inference that the injury of the appellee was the result of an accident that arose out of the employment. This would be true

whether the injury was received as the result of the
fall, or whether the injury was received and the fall
resulted therefrom. In either event, the causal connec-
tion is sufficiently established by the fact that the
Industrial Board could reasonably have determined that
the accident would not have occurred and the injury
would not have been received if the employee had not
been required, in performing the duties of his employ-
ment, to be traveling the particular street at the par-
ticular time, under the particular conditions and en-
vironment. In other words, from the evidence, the
Industrial Board was entitled to determine that the
employment of Dehn, in its conditions, its relation-
ships, or its environment, caused or occasioned the acci-
dent from which his injury arose. Under such circum-
stances, his injury "arose out of" his employment.

It is true that the more recent cases in this court,
and in other courts throughout the country, have tended
towards the establishment of the rule that the
employer will be held liable if the injury is the
result of an accident that occurs while the em-
ployee is in the course of his employment. Examples
of such cases in this State are: *Lasear, Inc.* v. *Ander-
son* (1934), 99 Ind. App. 428, 192 N. E. 762; *Hunt* v.
*Gaseteria, Inc.* (1938), 105 Ind. App. 197, 12 N. E. (2d)
992; *Montgomery* v. *Brown* (1941), 109 Ind. App. 95,
27 N. E. (2d) 884; *Odd Fellows Cemetery* v. *Daniels*
(1941), 109 Ind. App. 127, 33 N. E. (2d) 357; *Soetje
& Arnold, Inc.* v. *Basney* (1941), 218 Ind. 538, 34 N. E.
(2d) 26. There is nothing in the context of the act
that prevents such a construction. Many of the limita-
tions upon the granting of compensation under the
act are judicial inventions wholly unjustified by the
language of the act or the humane purposes of the
Legislature in enacting it. There is nothing in the

language of the act that requires an employee's injury by accident to arise out of the *nature* of the employment, nor is there anything in the language of the act that requires the risk to which the employee is subjected to be different from the risk to which the general public in the community is subjected. These limitations to the granting of compensation are but judicial accretions to the language of the act.

The award of the Industrial Board is affirmed and is increased five per cent as required by statute.

NOTE.—Reported in 39 N. E. (2d) 499.