B. G. HOADLEY QUARRIES, INC. *v.* EADS.

[No. 19,217.   Filed July 29, 1959.]

*William B. Weisell* and *Locke, Reynolds, Boyd and Weisell,* of Indianapolis, for appellant.

*Robert F. McCrea,* of Bloomington, *Donald E. Bowen* and *Kivett, Bowen, Clancy & Kivett,* of Indianapolis, for appellee.

PER CURIAM.—This appeal springs from an award of the Full Industrial Board, two members not concurring,

granting appellee compensation from appellant pursuant to a finding that appellee while in the employ of appellant on December 15, 1955, sustained personal injuries by reason of an accident arising out of and in the course of his employment with appellant, which accidental injury consisted of a strain which precipitated an injury to appellee's cervical and lumbar spine.

Appellant challenges the award on the ground that it is contrary to law. The propositions urged by appellant are that the award is not sustained by sufficient evidence and that appellant was denied due process of law. The latter proposition is predicated upon appellant's contentions (1) that the Full Board abused its discretion in remanding the cause to the hearing member for the hearing of additional medical evidence tending to show whether or not appellee's physical condition resulted from the accident on December 15, 1955; and (2) that two of the majority members of the Board making the final award appealed from were not members of the Board at the time of the original hearing and the review thereof by the Board, and that the hearing member, who initially heard the evidence, was not a member of the Board at the time of the final award, with the consequence that the award adverse to appellant was made possible by the concurrence of two members who had no previous contact with the case.

In order of decisive influence, appellant's said propositions of denial of due process call for the primary consideration. (1) Appellant says that at the hearing before the hearing member appellee failed to call any of four doctors who had treated him and that when he suffered an adverse decision by the hearing member he was permitted, on application for review by the Full Board, to have the cause remanded for the

purpose of hearing additional medical evidence to establish that his physical condition resulted from the accident, without explanation as to why the doctor was not presented at the original hearing. This, appellant urges, was such an abuse of the Board's discretion as to amount to a denial of due process to appellant.

The rights and duties provided for in the Compensation Act are contractual in character and arise out of the voluntary acceptance of the terms thereof by the employer and employee. *Warren* v. *Indiana Telephone Co.* (1939), 217 Ind. 93, 26 N. E. 2d 399. Our court has held that by their voluntary acceptance of said act, with the resulting contractual relationship, the contesting parties are in no position to complain that they were denied due process because of the exercise of discretionary powers by the Board. *Sollitt Construction Co., Inc.* v. *Walker et al.* (1956), 127 Ind. App. 213, 222, 223, 135 N. E. 2d 623. Rule 18 of the Industrial Board permits the introduction of new or additional evidence at the Board's discretion and the admission of such evidence is entirely within the discretion of the Board. While all of the cases which have come to our attention were cases wherein the Board denied application for presenting additional evidence and such action was held not to be an abuse of its discretion, yet we perceive no reason for treating the matter differently where the Board has permitted the taking of additional evidence. The Board, being an administrative body, is given a much broader discretion in the reception of evidence than are the courts. *The John C. Groub Company* v. *Brock* (1932), 94 Ind. App. 346, 352, 180 N. E. 923. Appellant has cited us no authority in support of its position and we have found none. The mere fact that appellee may

not have furnished adequate explanation for his failure to call the witness doctor in the original hearing does not, in our opinion, constitute the action of the Board in authorizing the additional evidence an abuse of its discretion. We conclude that appellant has not demonstrated that the Board abused its discretion in the respect contended for.

(2) We experience great difficulty in grasping appellant's contention that the composition of the Board that rendered the award was such as to deny it due process of law. At the time the appellee's proceeding was instituted, the Board consisted of five members, viz: Joseph P. Miller, Ramon J. Hitch, Emanuel F. Miller, R. M. Hennessy, and William T. McClain. The latter was the hearing member and on April 26, 1957 he entered an award adverse to appellee. The latter then filed his application for review by the Full Board. Thereafter, the Full Board, then consisting of Ramon J. Hitch, Warren W. Martin, Rob. R. McNagny, Joseph P. Miller, and R. M. Hennessy, made its award favorable to appellee. The award was concurred in by the said Ramon J. Hitch, Warren W. Martin, and Rob. R. McNagny. Said Joseph P. Miller and R. M. Hennessy did not concur in the findings and order. Thus, before the final award was entered, the original hearing member, William T. McClain, and the said Emanuel F. Miller, left the Board and were replaced by said Warren W. Martin and Rob R. McNagny. The member of the old Board, Ramon J. Hitch, and the two new members, Warren W. Martin and Rob R. McNagny, joined in rendering the award herein appealed from.

Appellant suggests that because the original hearing member, William T. McClain, who had heard all the evidence, except the subsequent evidence of the one doctor, was no longer on the Board, and the two new

members "had had no contact with the case," the decision was rendered by a Board "that had not heard the evidence" and, consequently, the requirements of due process were not met. However, appellant, in its urgency, leaves much to conjecture and which is not found in the record. We do not know, nor has appellant made it apparent that the two new members "had had no contact with the case." Neither has appellant established that the original hearing member "made no findings, either written or oral which made his opinion of the evidence available to the commission in making its decision."

On review, the Industrial Board hears the case *de novo* and the facts upon review by the Full Board are determined upon "the evidence introduced in the original hearing." Rule 18 of the Industrial Board. See, also, §40-1511, Burns' 1952 Replacement. We must assume, in the absence of any showing to the contrary, that the "evidence introduced at the original hearing" was made available to the members of the Industrial Board and that their determination was made thereon. Appellant has not shown that the determination of the Full Board, as constituted at the time of the award, was not made "upon the evidence introduced in the original hearing." We have found no requirement, nor has appellant directed our attention to any such requirement, that the hearing member must make his "opinion" of the evidence available to the Board, as appellant seems to propose. It follows, in the instant case, that as appellant has not established nor made apparent that the Board which rendered the award herein objected to, did not base its determination upon the evidence introduced at the original hearing and the additional

medical evidence, we must indulge all presumptions in favor of the award and deny appellant's contention.

Anent its proposition that there was insufficient evidence to sustain the finding and award herein challenged, appellant urges three stated deficiencies therein, namely: (1) that appellee's medical evidence was unsubstantial and without basis in scientific fact, (2) that the findings fail to conform to any of the medical evidence, and (3) that there was no evidence of accidental injury to appellee's spine, as found by the Board.

The evidence favorable to the award tends to establish the following facts: Appellee was employed by appellant from February 9, 1955 to December 15, 1955, as a "gang sawer". On December 15, 1955 appellee was thirty-two years of age, weighed between 180 and 185 pounds, and was a "strong physical man" in apparent good health. On the night of said December 15, appellee "punched" in at work at 9:50 P.M., and was told by his foreman to help "on the gang". A "gang" is "like a small railroad car" with "skids" or timbers on which a block of stone is placed. The ties of the gang pieces are about three and one-half feet off the ground.

At the approximate time of the occurrence giving rise to the claim of accidental injury, there was a block of stone on a gang holding four skids and appellee, with fellow workers, had to "maneuver" the skids out from under the block and one skid had to be lifted and put around in front of the gang. The skids weighed variously from 375 to 700 pounds. The moving of the skid was "something that did not ordinarily occur" and "wasn't particularly the ordinary duty we performed each night." Appellee made the first lift of the heavy skid, picking up the end of the skid by himself and "making an unusually heavy lift, tossed it over the

end." Appellee said that he "had to get on the front end of the dolly, to lift it up to scoot it back south and that was when I had to make my hard lift. . . . There wasn't anybody else lifting but me and Ross. My foot slipped off the dolly and I got down."

Appellee testified that when he was lifting "I did feel something"; "I went over and picked up my shovel and hammer and went in and told Oral Mellinger (a fellow employee) that he was going to have to watch my gang because I was sick. I laid on the bench . . . and went into the rest room. My arm, leg and back of my head got numb. . . . *I told him I just pulled something out* from the way I was feeling." The said Oral Mellinger testified that appellee came to him and said something "about getting sick" and that "he had lifted or helped carry that skid, and it made him sick." Robert Earl Edwards, another fellow employee, said that around one o'clock that night appellee said that he was sick and "that he thought he was hurt," and that appellee "vomited and was sick at his stomach just before we left the mill" at about six o'clock in the morning.

Appellee never returned to work after the night of December 15, 1955 and there is evidence that he lost weight, looked "more disabled", and, two or three weeks later, appeared "not to have any control of his left arm."

The medical testimony introduced by appellee is to the effect that the physician treated appellee professionally on or the day before Christmas in 1955; that appellee described what had occurred and the doctor "went through all the examination that would be indicated"; that the physician saw appellee on an average of every two or three days since that time; that appellee complained of pain in the back and back of the

neck and head and arm, and particularly his left leg; that he had lost the use of his left arm, that his left arm is totally useless and "I believe he is impaired as a man to do a man's work 100 per cent"; that his condition has gradually deteriorated and he is going "down hill"; that, in the opinion of the physician, "since the results came about such a short time, *this heavy lifting in the position he was, evidently caused a condition that caused his trouble,*" and that "I am of the opinion *he injured the spinal cord in both the cervical region and in the lumbar region,* not knowing about it at the time." He further said that "The spinal cord could have hemorrhaged at the two points because he was stooping over and this would put the spinal cord in a stretch and stretched it to the point where it ruptured in the two places" and that "I think there had to be two separate individual things happen in the spinal cord in order to cause the conditions found in the left leg and left arm. . . . I think his injury in the cervical region was a little hemorrhage to the spinal cord, and this caused the injury to the left arm because the nerve fibers lead off to control the arm at about the level of the fifth or sixth cervical verterbra. . . . I think something similar happened to the spinal cord in the lumbar region. . . . If the spinal cord was hemorrhaged, *I would not expect a man to be struck down at once because it could be slow developing like his was.*

Appellant's medical evidence was violently contradictory to that of appellee. The conclusion reached by appellant's physicians, as stated in appellant's brief, was that they found "a classic case of a vascular episode of the right hemisphere of the brain, bringing on a muscle weakness of the left side, the face, arm and legs such as was found. . . . a great functional or hys-

terical pattern which later developed . . ., that the brain damage . . . could not be related in any way to the lifting activity." Said doctors also "report that hemorrhages to the spinal cord would be anatomically impossible because . . . they would have knocked out function below the level of the lesion, and would not have been selective so as to involve only one side, as here. . . . that in lifting there is no strain on the spinal cord to cause a lesion, and on the improbability of simultaneous ruptures of two widely separated points of the spinal cord."

It is appellant's position that the medical opinion expressed by appellee's physician could have no basis in scientific fact and is nothing but a statement without foundation. This declaration is predicated upon the testimony of its medical witness that hemorrhages to the spinal cord, as described by appellee's doctor, would paralyze everything below the point of the higher hemorrhage and the disturbance would be bilateral, that is, on both the right and left sides; that upon withdrawal of the spinal fluid in the pneumoencephalogram there was no sign of old blood such as would be if there was a hemorrhage of the spinal cord; and there is an improbability of simultaneous ruptures at two points opposite the neck and low back, of the cord tissue.

The ultimate substance of appellant's contention concerning appellee's expert medical evidence is that it was of no probative value and the finding of the Board could not rest thereon. Appellant bases its contention that appellee's said medical testimony has no basis in scientific fact on the testimony given by its own medical experts. Now we do not know as a matter of law that the testimony of appellee's physician is contrary to scientific fact.

Other than the opinions and statements of appellant's medical witnesses, there appears nothing in the record to which our attention has been drawn establishing that the evidence given by appellee's physician as to the nature of the injury to appellee's body is contrary to scientific principles. Where the finding of the Board is dependent upon the adoption of conflicting views of medical experts, we cannot undertake to determine which of the two is more worthy of belief. *Burton-Shields Co.* v. *Steele* (1949), 119 Ind. App. 216, 224, 83 N. E. 2d 623. And "where a court cannot say as a matter of law that the testimony of a witness is contrary to scientific principles, . . . , the question of whether such testimony does so conflict is one of fact for the jury to determine." *Connor* v. *Jones* (1945), 115 Ind. App. 660, 670, 59 N. E. 2d 577. Upon the record now before us, we cannot admit the validity of appellant's said contention.

It is next proposed by appellant that there is no evidence in the record that "the injury here was to appellee's cervical and lumbar spine." Further, appellant says that there is not a modicum of evidence of any ruptured intervertebral discs, fractures of the bone, or muscle involvements, and no pain experience at the time of the activity complained of. Dr. Claude Dollens, a medical witness for appellee, said that "Injury to the spinal cord can occur without fractures." Also, he said, that the heavy lifting by appellee in the position he was, evidently caused a condition that caused all his trouble. "I am of the opinion that he *injured the spinal cord in both the cervical region and in the lumbar region*." Again, he stated, "he was stooping over and this would put the spinal cord in a stretch and stretched it to the point when *it ruptured in two places*." We find no evidence,

as condensed in appellant's brief, that an injury to the spine must be or is always accompanied by or with a pain experience. We advert to such matter because appellant seems to imply in its discussion that if appellee had suffered an injury to his spine, there would have been a pain experience. The absence of any evidence of a pain experience is not conclusive that appellee suffered no pain experience, particularly in view of there being no record enquiry as to such subject directed to any witness. We think there was some evidence before the Board that appellee did suffer an injury to his spine as a result of the lifting of the heavy skid, and that said evidence was sufficient to support the finding of the Board on that issue.

Finally, appellant urges that the record is devoid of proof of personal injury by accident within the concept of the compensation law. In furtherance of this proposition, appellant further says that the evidence is deficient as to any unexpected or untoward event constituting an accident. There is evidence that the work of lifting the heavy skids or timbers which appellee was doing the night of December 15, 1955 was "something that did not ordinarily occur" and "wasn't particularly the ordinary duty we performed each night." At the hearing which was held more than one year after the occurrence of the alleged accident and injury, one witness testified that "I haven't noticed a shift of a skid like this since that night (referring to December 15, 1955)." From said evidence the Board could conclude that the lifting of these heavy skids was not the usual work performed by appellee in his capacity as a "gang sawer." There is evidence that the skids being lifted by appellee and his fellow workers were very heavy, weighing variously from 375 to 700 pounds, and that in moving one of the skids out appel-

lee caught the south end of the skid "by himself", making "an *unusually* heavy lift," and tossed it over the end. That appellee's foot "slipped off the dolly", and he "got down" and told one of his fellow employees that he was sick, his arm, leg, and back of his head "got numb", and that he had "just pulled something out."

Here we have evidence of an unusual strain or exertion by appellee in doing work which was beyond his usual, ordinary and daily employment; that immediately after the "unusually" heavy lift, appellee became sick and his arm and leg became numb; and he stated to a fellow worker that he had "just pulled something out." We think that said evidence is sufficient to show an "unlooked for mishap or untoward event not expected or designed" (*Burroughs Adding Machine Co.* v. *Dehn* (1942), 110 Ind. App. 483, 39 N. E. 2d 499), occasioned by an "extra exertion" while engaged in an "unusual work load" of his employment. Such evidence, we think, meets the requirements laid down in *United States Steel Corporation* v. *Dykes* (1958), 238 Ind. 599, 154 N. E. 2d 111, and establishes that appellee "sustained personal injuries by reason of an accident arising out of and in the course of his employment", as found by the Board.

We have considered all propositions of error presented by appellant and find none warranting a reversal of the award appealed from.

Award affirmed.

Smith, J., not participating.

NOTE.—Reported in 160 N. E. 2d 202.