LOCK-JOINT TUBE COMPANY, INC. *v.* BROWN.

[No. 19,672, Filed June 20, 1963. Rehearing denied August 14, 1963. Transfer denied November 19, 1963.]

*Arthur A. May,* and *Crumpacker, May, Beamer, Levy & Searer,* of South Bend, for appellant.

*David L. Matthews,* of South Bend, for appellee.

KELLEY, J.—Pursuant to a due hearing and review on appellee's form 9 application, the Full Industrial

Board found that appellee, on or about September 29, 1958, while in the employ of appellant, sustained personal injury as the result of an accident arising out of and in the course of his employment; that

"said injury consisted of an aggravation of a pre-existing osteo-arthritic condition of the cervical spine;

" . . .

"that plaintiff's condition resulting from said accidental injury has now reached a permanent and quiescent state and has resulted in a permanent partial impairment of 20% of the man as a whole."

An award of compensation to appellee followed the finding.

On assignment that said award is contrary to law, appellant prays a review and reversal of the award.

The principal contention of the appellant herein is that the finding and award of the Industrial Board is contrary to law and that as a matter of law the injury was not compensable because it was not caused by an accident arising out of and in the course of appellee's employment.

The facts most favorable to the appellee which must be considered in passing upon the contention of the appellant are that appellee, a man of 56 years of age, was an employee of the appellant in the capacity of "a shipping and receiving clerk and a set-up man and machine operator"; we are not apprised by the briefs of the extent, nature and character of the duties, activities, and engagements required by appellee in these various lines of work. It appears from the testimony of appellee that he had been lifting sides off the "machines" as a part of his work "up until September 1958, when I was injured." Appellee testified that in the month of September, 1958:

"I took the side off the square machine and went to set it on the floor; when I got pretty close to the floor with it, I got a catch in my neck and then dropped it. I tried to raise up then, and I couldn't for a minute or so."

The "side" lifted by appellee weighed "a good seventy (70) pounds or more." Appellee was then instructed not to lift any more of the "sides." Appellee continued to work eight hours a day until October 24, 1958, on which date the employees of appellant "walked out on a strike."

From October, 1958, until May 10, 1960, appellee continued with medical treatment by Dr. Ebin. This physician testified concerning the various dates, examinations, particular conditions and complaints of appellee, the findings, and medical conclusions, during the time from October, 1958, to May, 1960. In substance, he stated that in December of 1956 the X-rays showed a moderate amount of osteoarthritis in the lower cervical region; that in October, 1958, he thought the numbness complained of by appellee was related to the arthritis of the spine in the lower cervical and upper thoracic region and he advised heat and traction; that in January, 1959, he thought it might be necessary to hospitalize appellee for physical therapy and a myelogram, and do a decompressive laminectomy; that on March 3, 1959 appellee was admitted to the hospital and on March 4, 1959 the witness did a myelogram, which was normal; that X-rays of appellee's cervical spine showed a "slight bony encroachment on the neutral foramina between C3 and 4 vertebrae"; that on March 21, 1959, a cervical laminectomy was performed and the spinous process and right laminae of the second, third and fourth vertebrae of the cervical portion of the spine were removed; that "indentations were noted in the

dura on removal of the bone at the sites of the laminae which indicated that there was some pressure and that the pressure was from osteoarthritis."

Appellee testified that the physician told him that "you have some pieces in the vertebrae in your neck"; that "It seems like when I go to turn my head it was just like a flash of lightning right up the back of my head"; he said the pain began when he lifted the siding and that he first observed this pain "after I done that lifting"; that when Dr. Ebin told him "there was pieces of my vertebrae, I knew that was caused by my lifting of something." The medical witness, Dr. Ebin, was asked on direct examination:

" . . . from your knowledge of Mr. Brown's physical condition over a period of years, and from your clinical findings, . . . could the physical findings have been caused by or have been contributed to by the lifting of a seventy pound piece of metal and thereby making it impossible for Mr. Brown to straighten up after the lifting?"

to which question he answered "Yes, Sir"; and then the interrogatory was put to him: "Was it contributed to by this lifting?" He answered, "In my opinion it was." In the course of his direct examination, Dr. Ebin, in explanatory manner, said that the spinal canal is the space within the vertebrae and contains the spinal cord, and nerves and membranes surround the spinal cord; that when a person bends over, the nerves are drawn taut and when a person does some movement requiring physical exertion, all the muscles are held tautly; that in the spinal canal there is plenty of room for the nerve to go through in this opening without producing any compression of the nerve; that in the case where the patient has severe osteoarthritis of the spine there is a cord of new bone at the joints of the vertebrae

and this protrudes into the spinal canal and when the nerve is drawn taut, the nerve would then be drawn over the bony surface and subjected to compression and irritation.

The physician further testified that he estimated that the percent of permanent impairment to appellee at the time of the hearing was about 20% of the man as a whole and that this estimated permanent impairment rating was arrived at by the fact that when he examined appellee in December, 1956, the latter was apparently not disabled at all, that he had osteoarthritis but he was functioning and able to do heavy work fairly well; and when he saw appellee on subsequent times on May 10, 1960, there was some impairment of his ability to do some of these things. On cross-examination, in response to the question of whether he was able to say what part of the 20% was caused by the arthritis condition, the physician said: "I would say he had arthritis in 1956 and he has arthritis now and he is not able to function now like he was then." The doctor again confirmed his previously expressed opinion that the "physical observations" made by him on his examination of appellee in May, 1960 were caused or in part caused by the lifting appellee "may have done" in September, 1958.

During the cross-examination of Dr. Ebin, appellant put in evidence three letters and medical reports of the witness directed to two of appellee's attorneys. In the three exhibits Dr. Ebin made reference to the examinations, surgical procedures and treatments of appellee, stating the different physical regions of tenderness, numbness and pain experienced by appellee. In the first letter, Exhibit A, the witness stated that "Arthritis of the cervical spine could produce the picture that I saw in October of 1958. Similarly, an injury

superimposed to arthritis could produce that picture."
In some of the letters, the physician expressed his
conclusion and opinion that the diagnosis in the case is
osteoarthritis of the cervical spine and that the com-
plained of sufferings by appellee were caused by osteo-
arthritis of the spine.

The foregoing facts and the reasonable inferences to
be drawn therefrom, as established by the evidence
most favorable to appellee, constitute the record
which we must consider in examining the ap-
pellant's assignments of error. Therefore, we
must apply to these facts the existing pertinent rules
of law which we consider to be controlling as to such
facts in order to determine whether the award of the
Industrial Board in the instant case is contrary to law.
We must recognize the well established rule that this
court will not disturb a finding of fact by the Indus-
trial Board unless the evidence with all reasonable in-
ferences deducible therefrom are of such conclusive
nature as to force a contrary conclusion. *Heflin* v. *Red
Front Cash & Carry Stores, Inc.* (1948), 225 Ind. 517,
75 N. E. 2d 662.

The appellant relies upon the two cases of *U. S. Steel
Corporation* v. *Dykes* (1958), 238 Ind. 599, 154 N. E.
2d 111, and the case of *B. G. Hoadley Quarries, Inc.*
v. *Eads* (1959), 129 Ind. App. 670, 160 N. E.
2d 202, in support of its contention that there is a lack
of evidence from which any reasonable inferences could
be drawn that the appellee suffered an *accident* arising
out of his employment within the meaning of the In-
diana Workmen's Compensation Act.

In *U. S. Steel Corporation* v. *Dykes, supra,* the facts
upon which the decision was based and upon which the
declaration therein was predicated were limited to a sit-

uation where the employee in question was returning from a water fountain in his place of employment where he had gone for a drink of water, and that when he was half way through "Bay 2" in the factory he was staggering and "had both hands up against his chest." Seeing that he was "going to fall" a fellow worker ran to him and eased him down to the floor. The fellow worker then called an ambulance but the decedent Dykes was dead when it arrived.

The Supreme Court opinion in the foregoing Dykes case discussed the case of *Slaubaugh* v. *Vore* (1953), 123 Ind. App. 497, 110 N. E. 2d 299, and held that it was clearly distinguishable from the case then under consideration, and said, with reference to the Slaubaugh case:

> "In that case the Industrial Board found that the accident (attack) was caused by *extreme exertion,* and such finding is supported by competent evidence."

Also, the Supreme Court, in the Dykes case, by dicta which has created considerable confusion in the previously declared law in similar cases, stated:

> "The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself."

It must be borne in mind that the decedent in the Dykes case, when returning from the water cooler, was not then in the performance of any work or tasks *in his employment* when he suffered a heart attack. However, since the above and foregoing expressed dicta, as stated, seems to be contrary to all the previous well established rules of law applicable to such cases, and

since the Supreme Court in the said Dykes case, stated flatly that the facts of the case of *Slaubaugh* v. *Vore, supra,* were distinguishable, it appears necessary to consider the Slaubaugh case in the light of the established law before the said ruling was made in the Dykes case.

It is significant to note that in the Slaubaugh case, which the Supreme Court distinguished in the Dykes case, the Appellate Court, speaking through Judge Achor, pointed out the difference in the Ohio rule and the Indiana rule and rejected the contention of the appellant that "in order to constitute an accidental injury it must appear that the death or injury was caused or contributed to by some act which was different in kind or in exertion from the regular, ordinary work performed by the workman and those engaged in like occupation." In the Slaubaugh case, referred to and distinguished in the Dykes case, this court flatly held that the rule is not, as was contended for by the appellant, that compensation would not be allowed if an employee put forth no greater exertion than he had put forth during the active period of his employment. The court, in the Slaubaugh case, discussed the rule which had become well established through the decades of interpretation of the Workmen's Compensation law, and as the same was found in the case of *Indian Creek Coal & Mining Company* v. *Calvert et al.* (1918), 68 Ind. App. 474, 119 N. E. 519, and *The Studebaker Corporation* v. *Jones* (1937), 104 Ind. App. 270, 10 N. E. 2d 747. In both of those cases there was no factor of any unusual or *extreme* exertion involved. In the said Indian Creek Coal Co. case, as pointed out in the *Slaubaugh* v. *Vore* case:

"Death followed pain experienced by decedent while pushing a coal car in a mine and the col-

lapse came when decedent was loading coal, both in the *ordinary way*." (p. 502, 123 Ind. App.)

The said Studebaker Corporation case, as discussed in the Slaubaugh case, referred to the employee's work as his *ordinary work* which consisted of lifting automobile hoods upon a conveyor belt, and held that such a situation presented a compensable injury as an accident arising out of and in the course of the employee's employment and that it was not essential to determine the amount and extent of the strain, effort, or exertion necessary to be expended as a legal cause for such compensable injury.

The *B. G. Hoadley Quarries, Inc.* v. *Eads* case, *supra,* presented a situation of extreme exertion, and, in our opinion, fails to do more than refer to the requirements of the rule set forth upon the particular facts of the Dykes case. In the Dykes case the employee suffered a natural heart attack *without any exertion* while returning from the water cooler. We are not inclined that it can be said that the Supreme Court, in the light of the facts of the Dykes case, intended to overrule the well developed and long established rule of compensable injury and accident which prevails in the case of an aggravation of an existing disease. If the referred to unfortunate language or dicta recited in the Dykes case was intended to deny compensation in all cases of aggravation of hernia, heart disease and other physical ailments in all cases of normal pressures and exertion in normal employment, the court should have so stated with definiteness and without uncertainty.

If the courts of this state in the future intend to say, as contended for by appellant, that the *amount of exertion,* whether it be the lifting of 70 pounds in the instant case or the lifting of the automobile hood in

the *Studebaker* v. *Jones* case, *supra,* is the controlling factor, then our courts will be burdened with the arbitrary, illogical and absurd duty of drawing gossamer lines of distinction, measurement and degree so that in one case the lifting of 40 pounds may be termed an extreme exertion while in another case the lifting of 100 pounds may be insufficient to constitute extreme exertion.

While the aforesaid dicta of the said Dykes case would seem to apply such a standard, the facts of the case and the fundamental doctrine announced in the decision itself, squared with the well developed previous law that a person suffering a heart attack as the result of the aggravation of the pre-existing condition by the lifting or the strain of his normal work, in his regular employment, does suffer an accident within the course of his employment; and that the well established rule arrived at in the development of the Workmen's Compensation law, namely, that exertion in the regular work of an employee which aggravates an existing condition and causes an injury thereby is compensable, remains undisturbed.

We are of the opinion that the established legal principles to which we have made reference, and which we deem to be unchanged by the doctrine of the Dykes case, basically warrant us to conclude that there is clearly sufficient creditable medical and lay evidence in the record before us to impel us to an affirmance of the finding of the Full Industrial Board that the appellee suffered an accident arising out of and in the course of his employment.

Award affirmed.

Mote, C. J., Hunter and Pfaff, JJ., concur.

NOTE.—Reported in 191 N. E. 2d 110.