145 Ind. App. 504 (1969)
251 N.E.2d 575
CHESTNUT
v.
COCA COLA BOTTLING COMPANY OF INDIANAPOLIS.
No. 669A96.
Court of Appeals of Indiana.
Filed October 22, 1969.
Rehearing denied December 1, 1969.
Ross P. Walker, of Indianapolis, for appellant.
Geoffrey Segar and Edward J. Ohleyer, of Indianapolis, for appellee.
HOFFMAN, J.
This is an action for judicial review of a negative finding of the Full Industrial Board of Indiana denying appellant's claim for compensation.
The stipulation of facts entered into by the parties hereto discloses the following circumstances:
On March 18, 1968, appellant-Chestnut was in the employ of appellee and worked as a porter for wages in excess of $85 *505 per week. Appellant had been employed by appellee for approximately 27 years. His duties consisted of "moving things and cleaning up." For a period of some four years prior to the date in question, appellant had experienced pain in his lower back.
The record before us discloses, from the testimony of the appellant, the following facts pertinent to the incident complained of, and such testimony is summarized and set forth in appellant's brief at page 12, as follows:
"On March 18th, I just stooped over to take up some glass and I heard a `pop.' I did not slip. I might have been in a twist. I got the glass in a pan when I heard the `pop.' It started hurting down my leg after I stooped over to pick up the lgass [glass]. I never had any trouble down my leg before. I went to Methodist Hospital. They referred me to an orthopedic doctor, Dr. Pierce. They operated on me. I feel pretty good other than the leg where the pain went."
Appellant filed his claim for benefits under Acts 1963, ch. 387, § 1, p. 1025, Burns Ind. Stat., Anno., § 40-1202, commonly known as the Workmen's Compensation Act.
Examinations were made by the appellant's attending physician, Dr. Raymond O. Pierce, Jr., and appellee's examining physician, Dr. Emmett B. Lamb. Both concluded that appellant had suffered a 10% permanent partial impairment of the whole man. Neither doctor, however, attempted to state the causal relationship between the prior existing condition and the "pop" on March 18, 1968.
On the basis of the agreed statement of facts and the reports of the two doctors, Robert W. McNevin, a member of the Industrial Board, rendered his award denying appellant compensation based on his finding that there was no "accident" as required by statute.
Thereafter appellant timely sought review of this award before the Full Industrial Board.
On May 15, 1969, the Full Industrial Board entered the following findings and award:

*506 "That on March 18, 1968, the plaintiff was in the employ of the defendant at an average weekly wage of $87.00; that on said date plaintiff did not suffer an accidental injury arising out of and in the course of his employment with the defendant.
"The Full Industrial Board of Indiana now finds for the defendant and against the plaintiff on plaintiff's Form 9 application filed September 26, 1968.
"AWARD
"IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that plaintiff shall take nothing by his Form 9 Application filed September 26, 1968."
Appellant contends that the award of the Full Industrial Board is contrary to law, specifically in that the Board misapplied the legal criteria for establishing whether appellant's injuries resulted from an "accident."
Appellant directs our attention to the findings of Hearing Member, Robert W. McNevin, wherein he found that, "... there was no accident within the rule established in City of Anderson versus Borton (1961), [(1962), 132 Ind. App. 684,] 178 N.E.2d 904, ...."
Appellant presents to this court, by his brief, only two points: 1) City of Anderson v. Borton, supra, 132 Ind. App. 684, 178 N.E.2d 904 (1962), is distinguishable from the instant case, and 2) that dictum in City of Anderson is misleading, if not erroneous relative to the existing precedents, and thus should be disapproved. Appellant, therefore, waives any other points or arguments that might be presented.
Appellant, in his brief at page 14, premises his argument on the following stated presumption:
"The single member and apparently the full board based the award herein squarely on City of Anderson v. Borton (1961) [(1962)], 132 Ind. App. 684, 178 N.E.2d 904." (Emphasis supplied.)
*507 We cannot agree that the finding of the Full Board apparently or otherwise rested on City of Anderson, supra. The hearing before the Full Board is a hearing de novo and the Full Board is in no way bound by the findings of the Hearing Member. B.G. Hoadley Quarries, Inc. v. Eads, 129 Ind. App. 670, 676, 160 N.E.2d 202 (1959).
The Full Industrial Board is expressly bound to make the findings required by the statute, which it properly did in this case. Its finding relative to the injury complained of here necessarily rested on all of the legal criteria established by the case law in Indiana. One of the cases purporting to establish criteria for the determination of an "accident" within the meaning of the statute was the City of Anderson case. The Full Board, however, was in no way bound by this specific case. There is sufficient evidence of probative value to sustain the findings and conclusion of the Full Industrial Board and there is no demonstrated legal error on the part of the Full Board.
Specifically because, as appellant points out, City of Anderson appears to have introduced a new standard for determining "accident" within the meaning of the statute, without purporting to amend or discard the old standards, we deem it important to the efficient administration of the Industrial Board to here review the City of Anderson case along with the other pertinent precedents.
In 1917 in Haskell, etc. Car Co. v. Brown, 67 Ind. App. 178, at page 187, 117 N.E. 555, at page 557, this court, citing United Paperboard Co. v. Lewis, 65 Ind. App. 356, 117 N.E. 276 (1917), first specifically defined the word "accident" relative to its use in the Workmen's Compensation Act, as follows:
"The word `accident' in the act in question is used in its popular sense, and means `any unlooked for mishap or untoward event not expected or designed.'" (Citing authorities.)
*508 This definition was employed exclusively in an unbroken line of cases[1] until the case of U.S. Steel Corp. v. Dykes, 238 Ind. 599, 154 N.E.2d 111 (1958), was decided by our Supreme Court. The facts of the Dykes case are relatively straightforward. One John Dykes worked as a "grinder" in a steel mill of United States Steel Corporation. His job as a "grinder" was described as heavy physical labor. He left his work area to go to a storeroom. On the way back, he stopped for a drink of water, clutched his chest, fell over and died shortly thereafter of a fatal heart attack. It was determined 1) that he had a pre-existing heart disease, and 2) that he was engaged in his normal and regular work at the time.
Chief Justice Bobbitt, speaking for our Supreme Court in Dykes, distinguished the Dykes case from the situation in U.S. Steel Corp. v. Douglas, et al., 125 Ind. App. 212, 123 N.E.2d 899 (1955), when he noted at page 610 of 238 Ind., page 117 of 154 N.E.2d that, "... in the Douglas case there was evidence that the decedent's pre-existing heart trouble was aggravated by an unusual exertion...."
Chief Justice Bobbitt further noted, at page 613 of 238 Ind., page 119 of 154 N.E.2d, that, "The mere showing that he [Dykes] was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself."
Quite clearly, a new standard was implicitly stated in the Dykes case, which was specifically limited to cases of pre-existing condition coupled with unusual exertion.
In 1959 the Dykes case was followed by B.G. Hoadley Quarries, Inc. v. Eads, supra, 129 Ind. App. 670, *509 160 N.E.2d 202 (1959). In the Hoadley case, the appellee was a "gang sawer" at a stone quarry. The evidence established that his injuries resulted from lifting the front end of a skid weighing from 375 to 700 pounds. It further established this to be an unusual occurrence. This court, at page 683 of 129 Ind. App., page 208 of 160 N.E.2d, held that,
"... said evidence is sufficient to show an `unlooked for mishap or untoward event not expected or designed.' (Burroughs Adding Machine Co. v. Dehn (1942), 110 Ind. App. 483, 39 N.E.2d 499), occasioned by an `extra exertion' while engaged in an `unusual work load' of his employment. Such evidence, we think, meets the requirements laid down in United States Steel Corporation v. Dykes (1958), 238 Ind. 599, 154 N.E.2d 111...."
It is noteworthy to point out, however, that in Dykes, as we earlier established, the decedent suffered from a pre-existing condition, whereas in Hoadley, there was no such pre-existing condition.
In Bundy v. Concrete Ready-Mix Co., 130 Ind. App. 542, 167 N.E.2d 477 (1960), and again in City of Anderson v. Borton, supra, this court applied the doctrine of the Dykes case, and in each case the court considered both criteria  pre-existing condition and unusual exertion.
In Lock Joint Tube Co. Inc. v. Brown, 135 Ind. App. 386, at pages 394-95, 191 N.E.2d 110, at page 114 (1963), Judge Kelley, speaking for this court, questioned the apparent departure in Dykes from the precedents:
"If the referred to unfortunate language or dicta recited in the Dykes case was intended to deny compensation in all cases of aggravation of hernia, heart disease and other physical ailments in all cases of normal pressures and exertion in normal employment, the court should have so stated with definiteness and without uncertainty.
"If the courts of this state in the future intend to say, as contended for by appellant, that the amount of exertion, whether it be the lifting of 70 pounds in the instant case or the lifting of the automobile hood in the Studebaker v. Jones case, supra, [104 Ind. App. 270, 10 N.E.2d 747] is *510 the controlling factor, then our courts will be burdened with the arbitrary, illogical and absurd duty of drawing gossamer lines of distinction, measurement and degree so that in one case the lifting of 40 pounds may be termed an extreme exertion while in another case the lifting of 100 pounds may be insufficient to constitute extreme exertion.
"While the aforesaid dicta of the said Dykes case would seem to apply such a standard, the facts of the case and the fundamental doctrine announced in the decision itself, squared with the well developed previous law that a person suffering a heart attack as the result of the aggravation of the pre-existing condition by the lifting or the strain of his normal work, in his regular employment, does suffer an accident within the course of his employment; and that the well established rule arrived at in the development of the Workmen's Compensation law, namely, that exertion in the regular work of an employee which aggravates an existing condition and causes an injury thereby is compensable, remains undisturbed."
Notwithstanding the attempted distinction, the Dykes doctrine still prevails.
In Anaconda Co. v. Aue, 136 Ind. App. 463, 202 N.E.2d 403 (1964), the most recent effort to explain and apply the Dykes doctrine was made by Judge Faulconer. Apparently appellee-Aue suffered his injury from lifting a 50-pound pig. As Judge Faulconer pointed out, there was some evidence of a pre-existing back condition but it was not at all conclusive. The Anaconda case was distinguished from Dykes since the question of a pre-existing condition was not in issue.
It is apparent from our review of these cases that to date there has been no explicit effort made by this court to clarify the Dykes doctrine.
We first of all reaffirm the definition of an "accident" contained in all the cases stemming from Haskell, etc. Car Co. v. Brown, supra, 67 Ind. App. 178, 117 N.E. 555 (1917). We would point out that this definition is both flexible and broad and clearly in line with the public policy governing the enforcement and interpretation of our Workmen's Compensation Law.
*511 Finally, we are of the opinion that the Dykes doctrine has implicitly imbedded itself in this area of concern; however, it is limited in its application, and serves only to supplement the definition established in the Haskell case.
We believe the doctrine of the Dykes case to be as follows: If the Industrial Board specifically finds a pre-existing condition in the area of injury, then the Industrial Board must specifically find that the injury resulted from an unusual exertion in order to determine that an "accident" occurred within the meaning of the statute.
The underlying reasoning behind an "unusual exertion" analysis rests on the desire of the court to find a more specific causal relationship between the injury complained of and the act which caused it arising out of and in the course of employment.
As Chief Justice Bobbitt pointed out in Dykes, at pages 607-608 of 238 Ind., page 116 of 154 N.E.2d,
"The causal question here is: Was the inability of decedent's heart to meet the demands, i.e., the `coronary insufficiency,' caused by a change, i.e., an increase in the work load beyond the heart's ability to function, or by a decrease in the heart's ability to meet an unchanged demand. The `cause' is that which has changed, not that which remains constant."[2]
There being no error demonstrated in the award of the Full Industrial Board, the award must be affirmed.
Award of the Full Industrial Board affirmed. Costs taxed to appellant.
Pfaff, C.J., concurs; Sharp, J., concurs in result; White, J., dissents with opinion.

*512 DISSENTING OPINION
WHITE, J.
The Full Industrial Board of Indiana found, inter alia, "that on said date plaintiff [appellant] did not suffer an accidental injury arising out of an[d] in the course of his employment with the defendant." Those findings "are ambiguous, and such as are denounced in works on pleading as negatives pregnant...."[1] From this statement of findings one cannot know what is negated. Is the board here finding:
1.) that appellant did not suffer an accident?
2.) that he did not suffer an injury?
3.) that he suffered one but not the other?
4.) that he suffered both accident and injury but the accident did not cause the injury?
5.) that he suffered an injury which was not accidental?
6.) that he suffered an accidental injury in the course of his employment which did not arise out of his employment?[2]
The ambiguity arises, in part at least, because long ago, in Empire Health, etc., Ins., Co. v. Purcell, 76 Ind. App. 551, 132 N.E. 664 (1921), we abandoned the requirement that "a statement of facts [which § 60 of the Indiana Workmen's Compensation Act (Burns IND. STAT. ANN. § 40-1511) requires the full board to file with its award] should consist of ultimate facts, and should not include ... conclusions of law."[3]Carlton v. Board of Zoning Appeals, 252 Ind. 56, 245 N.E.2d 337, 17 Ind. Dec. 704 (1969), requires that we once *513 again demand findings of ultimate facts and that we no longer accept conclusions of law in lieu thereof. But even if we are to accept conclusions we must know what is concluded so that we can determine[4] whether the evidence sustains the unexpressed findings of fact necessary to sustain the legal conclusions so "found." Therefore, I fail to see how we can avoid remanding this case to the board, preferably for a finding of facts, but in any event, for a resolution of the ambiguity.
Furthermore, I cannot agree that the facts found by the court in City of Anderson v. Borton, 132 Ind. App. 684, 178 N.E.2d 904 (1961), or by the majority in the case at bar, justify the conclusion (in either case) that the employee did not sustain an accident.[5]
However, there may well be a question whether the accident (i.e., the unexpected event: the "pop") which appellant *514 suffered arose out of his employment. His accident is obviously of that kind which people suffer when not at work. It is also the kind of an accident so often associated with a pre-existing pathological condition. Some laymen and some medical experts even believe such accidents happen only to persons who have preexisting conditions. Where, as here, there is some evidence of preexisting back trouble, the question of causation always arises. Did the employment cause the accident or was it caused by the preexisting condition or by both?
That the holding in U.S. Steel Corp. v. Dykes, 238 Ind. 599, 154 N.E.2d 111 (1958), is ambiguous is well demonstrated by the review of cases in the majority opinion. That ambiguity arises, in part at least, from the same "negative pregnant" which obscures the meaning of the Industrial Board's finding in the case at bar. Dykes speaks of the fatal heart attack in that case as something which might have happened to the decedent while he was engaged in non-occupational activities or even when sitting or sleeping and then reaches this negative pregnant conclusion (238 Ind. at 611): "In our opinion it was not the intention of the Legislature that such happening be considered a `death by accident arising out of and in the course of the employment.'"
At first blush this appears to say that it was not the intention of the Legislature that such a happening be considered an accident. However, the court could as well have meant to say that the Legislature did not intend that such an incident be considered as arising out of the employment. The true intended meaning must be gathered from the context of the entire opinion. I read the opinion not as holding that the fatal heart attack was not an accident, but that it did not arise out of the employment. One element in my interpretation is the statement of the "question" on page 607 of 238 Ind.:
"The question which we must then determine is whether or not the evidence in the record here is sufficient to sustain the finding of the Board, i.e., Is the evidence competent to show that decedent died as the result of an accident arising *515 out of and in the course of his employment or that there was a causal connection between his heart attack and his employment? (Emphasis added.)
"The causal question here is: Was the inability of decedent's heart to meet the demands, i.e., the `coronary insufficiency,' caused by a change, i.e., an increase in the work load beyond the heart's ability to function, or by a decrease in the heart's ability to meet an unchanged demand. The `cause' is that which has changed, not that which remains constant.
"The uncontradicted evidence here is that decedent's heart was steadily and surely losing its functional ability, but there is no evidence whatever of any increase in the work load or of any extra exertion. In fact, the unchallenged evidence is that the work load was lighter on the morning of the fatal attack."
One could add to the foregoing:
Ergo, "a decrease in the heart's ability" caused the heart attack. The heart attack was not caused by his employment and thus did not arise out of his employment, but out of his progressively deteriorating heart condition.
That, as I read Dykes, is the essence of what was there held. I can find nothing in the opinion which questions or alters the definition of the word "accident" as found in Haskell, etc., Co. v. Brown, 67 Ind. App. 178, 187, 117 N.E. 555, 557 (1917), and which is quoted in the majority opinion as follows: "The word `accident' in the act in question is used in its popular sense, and means `any unlooked for mishap or untoward event not expected or designed.'"
The views I have expressed herein are not intended to be an answer to all the questions which might arise if we had before us for review an award accompanied by an unambiguous finding of facts. Even were we to hold, as the majority inferentially has, that conclusions of law are findings of fact, we must first know which conclusions are found to exist and which are found not to exist.
For the reasons stated, I would reverse and remand with *516 directions to the board to take further action not inconsistent with the views I have expressed.
NOTE.  Reported in 251 N.E.2d 575.
NOTES
[1] See also: Indian Creek Coal, etc. Co. v. Calvert, 68 Ind. App. 474, 119 N.E. 519 (1918); Utilities Coal Co. v. Herr, 76 Ind. App. 312, 132 N.E. 262 (1921); Townsend & Freeman Co. v. Taggart, 81 Ind. App. 610, 144 N.E. 556 (1924); Cunningham v. Warner Gear Co., 101 Ind. App. 220, 198 N.E. 808 (1935); Pearson v. Rogers Galvanizing Co., 115 Ind. App. 426, 59 N.E.2d 364 (1945); Rauh & Sons Fertilizer Co. v. Adkins, et al., 126 Ind. App. 251, 129 N.E.2d 358 (1956).
[2] See the following cases citing Dykes for the proposition that there must be a showing that the causal factor is more than mere coincidence: Consumers Company v. Jefferson, 138 Ind. App. 499, 209 N.E.2d 32 (1965); Marshall v. Tribune-Star Publishing Co., 142 Ind. App. 556, 236 N.E.2d 508 (1968); U.S. Steel Corp. v. Brown, 142 Ind. App. 18, 231 N.E.2d 839 (1968).
[1] Fields v. State, 134 Ind. 46, 53, 32 N.E. 780 (1892), in which the court used the quoted language to condemn a jury instruction in a criminal case. That opinion quotes Stephen on Pleading, 380: "`A negative pregnant is such a form of negative expression as may imply, or carry with it, an affirmative.'" That definition is adopted by Black's Law Dictionary, 4th Ed., citing both the case and the quoted text.
[2] No purpose would be served by attempting to exhaust the questions implicit in this ambiguity.
[3] Inland Steel Co. v. Lambert, 66 Ind. App. 246, 250, 118 N.E. 162 (1917). See also, Stoner v. Howard Sober, 124 Ind. App. 581, 118 N.E.2d 504 (1954); Mousley v. Curry, 124 Ind. App. 280, 117 N.E.2d 280 (1954); Poke v. Peerless Foundry Co., 124 Ind. App. 544, 119 N.E.2d 905 (1954); Guevara v. Inland Steel Co., 121 Ind. App. 390, 95 N.E.2d 714 (1950).
[4] I also believe that Mousley v. Curry, supra, (note 3) and Cole v. Sheehan Const. Co., 222 Ind. 274, 280, 53 N.E.2d 172 (1944), deny us the right to make such determinations.
[5] Nor do I agree that the holding in City of Anderson "appears to have introduced a new standard for determining `accident' within the meaning of the statute." I do agree, however, that it did not amend or discard old standards, nor purport so to do. By the use of the word "so-called" before "accident" (132 Ind. App. at 694) the opinion writer indicates some question about whether the appellee sustained an accident. Yet, nowhere does the opinion say that the unexpected onset of injury or pain or rupture is not itself an accident, nor that what appellee contended was an accident was not, by legal definition, an accident. The opinion's conclusion merely holds that "appellee did not suffer injury as a result of and in the course of his employment." (132 Ind. App. at 695.) This is almost the same negative pregnant which is employed as a "finding" in the case at bar. It is less ambiguous, however, in that it excludes the possibility that it is a holding that appellee did not sustain an accident. But it does leave in doubt whether the court is holding that there is no injury, or that the injury suffered either did not result from the employment or was not suffered in the course of the employment. In Dooley v. Richard's Standard Service (Ind. App. 10/16/69) 145 Ind. App. 470, 18 Ind. Dec. 754, 251 N.E.2d 449, Division One affirmed a Full Industrial Board's negative award where the evidence was nearly identical in essence to that in the case at bar. Both the majority opinion and the concurring opinion treated the case as involving a question of employment causation. Neither treats it as a question of whether an "accident" occurred.