MOTOR DISPATCH, INC. *v.* BARBARA SNODGRASS AND WAYMON AND MAJORIE AUSTIN.

[No. 2-473A87. Filed September 19, 1973.]

*Michael V. Gooch, Harrison, Moberly & Gaston,* of Indianapolis, for appellant.

*John H. Baldwin,* of Indianapolis, for appellee, Barbara Snodgrass.

SHARP, J.—The Plaintiff-Appellee, Barbara A. Snodgrass, filed her Form 10 Application with the Industrial Board on July 14, 1971, for death benefits for herself and children as dependents of Jerry Leon Snodgrass who allegedly died as a result of an accident arising out of and in the course of his employment by Waymon Austin and Marjorie Austin, Defendant-Appellees here. The Austins filed answer denying liability. On August 5, 1971, Appellee Snodgrass filed her Petition to Join New Party Defendant, namely, Appellant Motor Dispatch, Inc., and said Form 10 was amended to include Motor Dispatch, Inc., as a party defendant. Later, On

November 30, 1971, Motor Dispatch filed its Petition to join a new party defendant, namely, Transamerican Freight Lines, Inc., which was granted. Transamerican filed an answer generally denying liability and requesting a dismissal. On May 15, 1972, after hearing, the Hearing Member found for Appellee Snodgrass and against all parties named as defendants. Thereafter, Motor Dispatch, Inc., and Waymon and Majorie Austin filed their Form 16 Applications for review by the Full Board of the original award. The Full Industrial Board held hearing and made appropriate findings and entered the following award:

> "IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that the plaintiffs, Barbara Ann Snodgrass, Ginger Renee Snodgrass and Sheryl Lynn Snodgrass, shall have and recover of and from the defendants, Waymon Austin and Motor Dispatch, Inc., compensation at the rate of $57.00 per week for a period of 500 weeks, but not to exceed the total sum of $25,000.; said compensation to begin on May 21, 1971, and to continue until otherwise terminated in accordance with the provisions of the Workmen's Compensation Act of Indiana.

> "It is further ordered that said compensation shall be brought up to date, paid in cash and in a lump sum.

> "It is further ordered that compensation for the minor children, Ginger Renee Snodgrass and Sheryl Lynn Snodgrass, shall be paid to Barbara Ann Snodgrass, their natural mother and guardian.

> "It is further ordered that the fees of the plaintiffs' attorney, shall be: a minimum sum of $25.00, and in addition thereto, 20% upon the first $1,000. recovered; 15% upon the second and third $1,000. recovered and 10% upon all sums recovered in excess thereof; said fees to be paid by defendants direct to plaintiffs' attorney, John H. Baldwin, with credit to the defendants against the compensation herein awarded plaintiff for all sums paid out as attorney fees in accordance with this award."

The Appellant, Motor Dispatch Inc., asserts here that such award is contrary to law.

## I.

It is elementary that the factual inferences here must be considered in the light most favorable to the Appellee here. It is equally well settled that Workmen's Compensation is for the benefit of the employee and the act must be liberally construed in favor of the employee so as to serve the act's humane purposes. These ideas are well illustrated and summarized by our Supreme Court in *Frampton* v. *Central Indiana Gas Company* (1973), 260 Ind. 249, 297 N.E.2d 425.

There is no dispute here as to the facts of marriage and dependency. It is also admitted that Jerry Leon Snodgrass was, at the time of his death, driving a truck owned by Waymon Austin under a trip lease agreement with Motor Dispatch, Inc. The critical area of factual dispute which the Industrial Board had to resolve was:

(a) Who was his employer at that time, or

(b) was he self-employed at that time.

The pertinent clause of said Trip-Lease agreement is:

"It is understood that the leased equipment under this agreement, is in the exclusive possession, control and use of the authorized carrier Lessee (Motor Dispatch) and that Lessee assumes full responsibility with respect to the equipment it is operating, to the public, the shippers, and the Interstate Commerce Commission. . . . The Lessor shall surrender full control, possession, and management of said equipment to the Lessee (Motor Dispatch) during the term of this lease which shall start at the delivery of the equipment and end with delivery of cargo at destination, and the Lessor further agrees to operate said equipment as directed by Lessee."

In addition, the Vice-President of Motor Dispatch testified that it was a common carrier with authority from Interstate Commerce Commission to carry from Macon, Missouri to Detroit, Michigan. This is considered an irregular route

and its dispatcher may authorize the routes specifically to the driver. Motor Dispatch has the right to stop the shipment if it so desires. At any time Motor Dispatch determines a truck is not being operated in accordance with its directives, it has a right to stop that truck and remove the driver.

These salient facts must be considered in light of several decisions of the Appellate Court on this subject.

In *Jackson Trucking Company, Inc.* v. *Interstate Motor Freight System, et al.* (1952), 122 Ind. App. 546, 553, 104 N.E.2d 575, the court said:

> " 'Under the Indiana common law in the case of a general employer-special employer relationship, it has been held that the liability imposed by the doctrine of *respondeat superior* is made to rest upon the one who has the *power to control and direct the servant in the performance of the particular work* (several cases cited).

* * *

> " 'The mode of payment and the right to terminate the relationship by discharge are each a circumstance to be considered along with other relevant facts and circumstances in determining the relationship, but neither alone is decisive. . . . *The power or right to command the act and to direct or control the means, manner or method of performance has been recognized in this state as the 'real' test* . . . *This court has recognized it as the* 'decisive test' "."

In another case involving co-employers, *Long* v. *Sims Motor Transport Co., et al.* (1954), 124 Ind. App. 504, 117 N.E.2d 276, 278, the court stated:

> "We find nothing in the Workmen's Compensation Act, Burns' Ann. St. § 40-1201 et seq., which gives sustenance to that proposition nor to appellant's proffered concept that the act 'requires the right in both or in all to exercise the *same* control over the whole.'

> "It is obvious that the evidence adduced before the Board in this cause and to which we have herein adverted, does not, in all respects, establish 'like' or the 'same' control in appellant and Sims. However, in our opinion, the evidence is sufficient to demonstrate a mixed control, not neces-

sarily complete in either, by appellant and Sims over the equipment, the driver and the manner, means, and method of performance.

"* * * We are not here broadening the rules applicable to dual employers. We simply apply established legal principles to a modern-day business arrangement or situation to the end that substantial justice will result."

More recently in *Wabash Smelting, Inc.* v. *Murphy etc.* (1962), 134 Ind. App. 198, 210, 186 N.E.2d 586, the court said:

"There are sufficient facts in the record of the case at bar from which the Board could have drawn the conclusion that both appellant and Murphy are jointly liable for compensation under the holding in the *Jackson* case, *supra*.

\* \* \*

"Appellant made a layout of Earl's trip, told him where to go, what load to haul, where to unload it and what return load to pick up and bring back. Appellant's Director of Properties said he had complete control over whether or not to use the equipment after it was leased, and that it was appellant's to do with as it saw fit until it was returned to Murphy. Murphy had no part in directing Earl what to haul or how to make the trip. This was a matter strictly within control of appellant.

"Under these circumstances, we are constrained to hold that both Murphy and appellant fall within the 'real' and 'decisive' test set forth in the *Jackson* case, *supra*, . . . "The evidence presented to the Board does not establish the same or identical control in both appellant and Murphy, but it is sufficient to demonstrate a mixed control, not necessarily complete in either, over the truck, Earl, and the manner, means and method of his performance. *Long* v. *Sims Motor Transport Co. et al.* (1954), 124 Ind. App. 504, 117 N.E.2d 276."

In its Reply Brief, the Appellant issues us the invitation to weigh the evidence and come to a different conclusion than the Industrial Board on the issue of co-employment. It is an invitation we must respectfully decline. The decision of the Industrial Board is well within purview of the *Jackson Trucking-Long-Wabash Smelting* trilogy of cases and is therefore not contrary to law.

There is one additional matter which we must consider. IC 1971, 22-3-3-31, Ind. Ann. Stat. § 40-1414 (Burns 1965) provides:

"Whenever any employee for whose injury or death compensation is payable under this act [§§ 40-1201, 40-1414, 40-1505—40-1704] shall at the time of the injury be in the joint service of two [2] or more employers subject to this act, such employers shall contribute to the payment of such compensation in proportion to their wage liability to such employees: Provided, however, that nothing in this section shall prevent any reasonable arrangements between such employers for a different distribution as between themselves of the ultimate burden of compensation."

While we affirm the decision of the Industrial Board, we must remand this case to the Board with instructions to determine the respective liability of both employers under said Section 40-1414.

The decision of the Industrial Board is hereby affirmed and this case is hereby remanded for proceedings consistent herewith.

Hoffman, C.J. and Staton, J., concur.

NOTE.—Reported at 301 N.E.2d 251.