CHARLES M. ELLIS, JR. *v.* HUBBELL METALS, INC.

[No. 2-377A107. Filed August 23, 1977. Rehearing denied October 4, 1977. Transfer denied May 16, 1978.]

*Merle B. Rose, John M. Cronin,* of Indianapolis, for appellant.

*Theodore L. Locke, Jr., Michael A. Bergin, Locke, Reynolds, Boyd & Weisell,* of Indianapolis, for appellee.

LOWDERMILK, J. — This case was transferred to this office from the Second District in order to help eliminate the disparity in caseloads among the Districts.

## STATEMENT OF THE CASE

Plaintiff-appellant Charles M. Ellis, Jr. appeals from a final decision of the Full Industrial Board of Indiana which denied his application for an award under the Workmen's Compensation Act.

## FACTS

The facts most favorable to the decision of the Full Industrial Board are that on February 15, 1974 Ellis, while performing his normal duties as a sheet metal slitter at Hubbell Metal Works, bent over to pick up a roll of sheet metal. Ellis testified that shortly after he began to lift the metal, he felt a sharp pain in his lower back near his tailbone. He could not straighten up, and he complained of intense pain in his lower back.

With his foreman's permission Ellis left work to see his chiropractor. Ellis had been experiencing sciatica and pains in his lower back since 1970 or 1971. On February 15, 1974, the day of the incident at work, after commenting that the problem in Ellis' back did not appear to be the same as it was prior to that date, the chiropractor made an adjustment in Ellis' back. The chiropractor told Ellis that it would not be necessary for him to return for any further adjustments unless he had more problems similar to that one.

Ellis spent the next two days in bed. At approximately 1:30 a.m. on February 18, 1974 Ellis had just gotten out of bed to go to the bathroom when he suddenly fell over beside the bed, and was unable to move his legs. An intense pain radiated down his spine to his tailbone. Upon his doctor's recommendation Ellis was admitted to a hospital that night and transferred to another hospital the next day.

Ellis was out of work until December, 1974. In the intervening period he consulted several doctors, spent several weeks in the hospital, underwent several diagnostic tests and a remedial laminectomy. No fractures or herniated discs were found. However, the doctors who submitted their respective opinions to the Board concerning the matter estimated that Ellis had a 10-25% permanent partial impairment of the whole body, as a result of his back condition. Prior to the incident of February 15, 1974 Ellis had received several awards and commendations because he had set several production records on his machine. Afterwards, when he began working again, he was not able to work with the same speed and intensity.

The Board decided that Ellis was not entitled to an award under the Workmen's Compensation Act because it found that the injury to his back of which Ellis complained did not arise out of the course of his employment. The Board found that the back problems which Ellis had experienced since February 15, 1974 were caused by a recurrence of a preexistent condition which was unrelated to his employment at Hubbell Metal Works.

## ISSUES

The issues presented to this court for review are:

1. Does the finding of the Board contradict itself by finding that Ellis injured his back while performing his job, and yet also finding that Ellis incurred temporary total disability and permanent partial impairment due to causes unrelated to his employment?

2. Was Ellis injured by an accident which arose out of and occurred in the course of his employment?

3. Is the finding contrary to law and unsupported by the evidence that Ellis should not receive an award?

4. Did the Board err at law by denying Ellis temporary total disability?

Issue One

Ellis contends that the findings of the Board are inconsistent in that, he alleges, it finds that he injured his back while performing his employment and yet, that his injuries were unrelated to his employment. Ellis misreads the findings of the Full Industrial Board. The pertinent parts of the Board's findings are as follows:

". . . It is further found that on February 15, 1974, *plaintiff testified* that while performing his job in the normal manner, he bent over to pick up a rolled sheet of steel and injured his back.

* * *

It is further found that the onset of pain on February 15, 1974, was due to a reoccurrence of plaintiff's preexistent condition.

It is further found that any temporary total disability and medical expense incurred by plaintiff since February 15, 1974, were due to causes unrelated to his employment with the defendant." (Our emphasis)

A careful reading of the Board's findings, *supra*, indicates that the Board did not find that Ellis injured his back while trying to pick up a roll of steel, but that *he testified* that such occurred. There are no inconsistencies in the Board's findings.

Issues Two, Three and Four

Ellis contends that his injury was accidental and that it arose out of and was incurred in the course of his employment.[1] He also contends that the decision of the Industrial Board was contrary to law and was not supported by the evidence.

---

1. Before the recovery of an award can be obtained under the Workmen's Compensation Act the one seeking such award must show that he or his decedent suffered an injury or death by accident arising out of and in the course of employment. See IC 1971, 22-3-2-2 (Burns Code Ed.).

In reviewing the record on an appeal from a decision of the Industrial Board we cannot weigh the evidence or determine the credibility of witnesses, but can only consider that evidence which supports the decision of the Board and the reasonable inferences which can be drawn therefrom. Since Ellis appeals for a negative judgment, he must show that the Board's decision was contrary to law by showing that the evidence was without conflict, that it could lead to but one conclusion, and that the Industrial Board reached the opposite conclusion.[2]

The Industrial Board did not address itself to the question of whether Ellis' injury resulted from an accident.[3] The Board found that Ellis' back troubles resulted from a recurrence of a pre-existing condition and were unrelated to his employment. That finding, alone, precluded his recovery of an award.

In finding that Ellis' injury did not arise out of his employment the Board followed certain dicta as set forth in *U.S. Steel Corp. v. Dykes* (1958), 238 Ind. 599, 154 N.E.2d 111 where it was held that a worker with a diseased heart, who died of a heart attack during a break from his regular work duties, was not entitled to compensation. The court in *Dykes, supra,* at 613 stated:

> "It seems to us that the only conclusion which reasonable men could reach from the foregoing evidence, with all the inferences reasonably deducible therefrom, is that the decedent herein was afflicted with a diseased heart and coronary system, *which had deteriorated to the point where it could no longer stand the load imposed upon it by his regular and usual work,* and that his death resulted solely from coronary arteriosclerosis progressing gradually to the point where it caused his death.
>
> *The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not*

---

2. See *Lincoln et al. v. Whirlpool Corp.* (1972), 151 Ind. App. 190, 279 N.E.2d 596 and *Davis v. Webster* (1964), 136 Ind. App. 286, 198 N.E.2d 883.

3. For the purposes of the Workmen's Compensation Act the word "accident" has been defined as some "mishap or untoward event not expected or designed." See *Haskell and Barker Car Co. v. Brown* (1917), 67 Ind. App. 178, 117 N.E. 555.

*establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself."* (Our emphasis)

The Board in the case at bar concluded that Ellis had a previously existing back condition "which had deteriorated to the point where it could no longer stand the load imposed upon it by his regular and usual work." He had a weakness which manifested itself under normal stress.

There are cases which have awarded compensation for injuries which were incurred when the worker performed a task requiring unusual exertion,[4] even where preexisting injury or disease existed and was aggravated by the accident.[5] There have been cases which have allowed compensation for injuries received by a worker while performing his regular work in the absence of preexisting disease or injury.[6] But, where preexisting injury or disease exists the courts have been in conflict with each other with regard to awarding compensation for death or injuries that occurred during the performance of the worker's regular duties.[7]

We believe that the better rule with regard to recovery by a worker for the accidental aggravation of a preexisting injury while performing his regular work duties is found in *Lock-Joint Tube Company v. Brown, supra,* which reads on page 114 as follows:

"... In the Dykes case the employee suffered a natural heart attack *without any exertion* while returning from the water cooler. We are not inclined that it can be said that the Supreme Court, in the light of the facts of the Dykes case, intended to overrule the well developed and long established rule of

4. See *Estey Piano Corp. v. Steffen* (1975), 164 Ind. App. 239, 328 N.E.2d 240.

5. See *U.S. Steel Corp. v. Douglas et al.* (1955), 125 Ind. App. 212, 123 N.E.2d 899.

6. See *Inland Steel Co. v. Almodovar* (1977), 172 Ind. App. 556, 361 N.E.2d 181, and *Studebaker Corp. v. Jones* (1937), 104 Ind. App. 270, 10 N.E.2d 747.

7. See *Chestnut v. Coca Cola Bottling Co.* (1969), 145 Ind. App. 504, 251 N.E.2d 575 (no compensation awarded), *City of Anderson v. Borton* (1962), 132 Ind. App. 684, 178 N.E.2d 904 (no compensation awarded), *Lock-Joint Tube Company v. Brown* (1963), 135 Ind. App. 386, 191 N.E.2d 110 (compensation awarded), and *Callahan v. Lovelace Truck Service* (1971), 149 Ind. App. 314, 271 N.E.2d 734 (compensation awarded).

compensable injury and accident which prevails in the case of an aggravation of an existing disease.[8] If the referred to unfortunate language or dicta recited in the Dykes case was intended to deny compensation in all cases of aggravation of hernia, heart disease and other physical ailments in all cases of normal pressures and exertion in normal employment, the court should have so stated with definiteness and without uncertainty.

"If the courts of this state in the future intend to say, as contended for by appellant, that the *amount of exertion*, whether it be the lifting of 70 pounds in the instant case or the lifting of the automobile hood in the *Studebaker v. Jones* case, *supra*, is the controlling factor, then our courts will be burdened with the arbitrary, illogical and absurd duty to drawing gossamer lines of distinction, measurement and degree so that in one case the lifting of 40 pounds may be termed an extreme exertion while in another case the lifting of 100 pounds may be insufficient to constitute extreme exertion.

"While the aforesaid dicta of the said Dykes case would seem to apply such a standard, the facts of the case and the fundamental doctrine announced in the decision itself, squared with the well developed previous law that a person suffering a heart attack as the result of the aggravation of the pre-existing condition by the lifting or the strain of his normal work, in his regular employment, does suffer an accident within the course of his employment; and that the well established rule arrived at in the development of the Workmen's Compensation law, namely, that exertion in the regular work of an employee which aggravates an existing condition and causes an injury thereby is compensable, remains undisturbed." (Footnote added) (Original emphasis)

Therefore, a worker may be awarded compensation when a preexisting condition is aggravated by an accident which occurs during the performance of his regular work duties. In defining the word "accident" most cases follow the *unexpected event* theory enunciated in *Haskell, supra.* Certain confusion has arisen from the attempt by the courts to identify the kind of unexpected event which is to be termed an "accident."

8. See *Indian Creek Coal & Mining Company v. Calvert et al.* (1918), 68 Ind. App. 474, 119 N.E. 519, 120 N.E. 709, *Studebaker Corporation v. Jones* (1937), 104 Ind. App. 270, 10 N.E.2d 747, and *Slaubaugh v. Vore* (1953), 123 Ind. App. 497, 110 N.E.2d 299.

In defining the unexpected event our courts have utilized two theories: the *unexpected cause* and the *unexpected result.* Under the *unexpected cause* theory an "accident" cannot occur in the absence of some kind of increased risk or hazard, e.g., a fall, slip, trip, unusual exertion, malfunction of machine, break, collision, etc., which *causes* an injury.[9] Under the *unexpected result* theory an "accident" may occur where everything preceding the injury was normal, and only the injury itself was unexpected, e.g., where a worker bends over, stoops, turns, lifts something, etc., which activity is part of his everyday work duties, and yet, as in the case at bar, he is unexpectedly injured.[10]

We shall use the *unexpected result* theory in determining whether an accident occurred in the case at bar, because the *unexpected result* theory is more in keeping with the humanitarian purposes that underlie the Workmen's Compensation Act, which the courts are required to liberally construe in favor of the worker.[11] Since the evidence in the case at bar indicates the incident occurred while Ellis was lifting a roll of steel, while engaged in his normal work duties, and since the disabling result from that event of lifting was neither foreseen nor expected, we hold that Ellis suffered an "accident" in the course of his employment.

We must next determine whether, as a matter of law, the Board erred in determining that Ellis' injury did not arise out of and did not occur in the course of his employment. In making such a determination we must examine the record to see if there is evidence which would support the Board's findings.

The Board seemingly based its entire decision upon its finding that the disabling event which Ellis experienced on February 15, 1974 was merely a spontaneous recurrence of a preexisting injury. We hold that such a finding is arbitrary and not supported by the evidence.

9. See *Rivera v. Simmons Co.* (1975), 164 Ind. App. 381, 329 N.E.2d 39 (principal opinion).

10. See *Inland Steel Co. v. Almodovar, supra,* and *Lock-Joint Tube Company v. Brown, supra.*

11. See *Motor Dispatch Inc. v. Snodgrass* (1973), 157 Ind. App. 591, 301 N.E.2d 251.

The following are extracts of Ellis' testimony at the hearing before the Board:

"Q I'll hand you what has been marked as Plaintiff's Exhibit Number 1, and ask you to tell what it is?

A This is a copy of our production records that we keep on the machine. They keep a daily record on each operator. And this describes what we had done.

\* \* \*

Q When was the date of that record?

A Eighth of April, 1972.

Q And that was after the onset of this prior back problem?

A That is true.

Q And these records are on the machines that you operate?

A Yes.

\* \* \*

Q This was when you had an alleged back problem, this other back problem?

A That's correct.

Q You had some pain during this time, or what?

A Yes, but when I would get these pains, you know, I would go to the chiropractor and I would get these adjustments and be back to work.

Q Would you characterize the pain you had in February 15, 1974 as a completely, definitely different pain?

A Absolutely.

\* \* \*

Q Would you characterize any prior back pain you had, prior to this 1974 back pain, as disabling in any way?

A No, definitely not. I would go to the chiropractor, get an adjustment, sometimes I would take off in the morning from work, and my employer was gracious enough to pay me for that time off without charging me for it.

\* \* \*

Q Okay, after February 15th, 1974, were you able to paint the house?

A No.

Q Were you able to go bowling?

A No.

Q Were you able to do any garden work?

A No, sir.

Q Were you able to work the same number of hours you were working prior to February 15th, 1974?

A Definitely not.

Q Is it the same pain?

A I still have quite a problem.

Q Is it the same pain that you had — is this the same pain you had before?--Is the February 15th, 1974 the same pain as you had before in '72?

A No.

Q Completely different?

A Completely different.

Q Is there any other occurrence that happened to you at all that caused this pain, other than the February 15th, 1974 situation?

A No."

As it can be seen from Ellis' testimony, Ellis characterized the pain, which he experienced after February 15, 1974, as being completely different from the pain which he had experienced prior to that time. Prior to the accident Ellis was not disabled and could function normally. Afterward, he was severely limited in his activity. In other testimony Ellis indicated that after February 15, 1974 the pain became more intense, and the concentration of pain shifted from his hips and legs to his lower back in the area near his tailbone.

In a letter dated September 30, 1974 Dr. Rademacher, one of the treating physicians, wrote the following:

"Charles Ellis is a 32 year old caucasian male with low back pain for approximately three and a half to four years and with radiation of this pain into his right leg. The patient has been treated previously with rest and has done well but the pain has returned on several occasions. Most recently while the patient was at work at Hubbell Metals *he was injured and this injury occurred approximately February 15, 1974.* . . .The patient stated that his back has never hurt him as bad as it has since February 15th. He relates the severe onset of his pain to his occupation. He however does have a past history of back problems starting approximately three and a half to four years ago. *This problem has been aggravated according to the patients history by his most recent injury of February 15th.*" (Our emphasis)

In a letter dated May 16, 1975 Dr. Rademacher also wrote the following:

"In summary, this patient has had low back pain which was felt to be of a musculoskeletal origin but with symptoms of sciatica which started approximately three and a half years ago, *but was accentuated on February 15, 1974 when he sustained stress to his low back region while at work.*" (Our emphasis)

Therefore, there was evidence before the Board that Dr. Rademacher was of the opinion that Ellis' back troubles were aggravated by the incident which occurred at Ellis' place of work on February 15, 1974, and that the problems which Ellis experienced with his back after the incident of February 15th were not the result of a spontaneous recurrence of a prior condition.

The only evidence which could possibly support the Board's finding of a spontaneous recurrence of a prior condition is that Ellis had back pain before the accident and after. There is no evidence that the condition which caused Ellis' prior back pain was the same condition which caused his subsequent back pain other than the general finding that both were of musculoskeletal origin. In fact, there is every indication that the subsequent pain was more severe, concentrated in a different part of the body, and more disabling. Ellis' chiropractor, who had treated Ellis before and after the accident, indicated that Ellis' back problem subsequent to the accident appeared to be different from the previous problem.

There exists substantial evidence from which the conclusion can be drawn that Ellis' preexisting back condition was aggravated by the lifting accident at work on February 15, 1974, and there exists no evidence from which a reasonable inference could be drawn which would support the Board's finding that Ellis merely experienced a spontaneous recurrence of a prior injury. We now hold that, under the unexpected result theory which we adopted above, Ellis suffered an accidental aggravation of a preexisting injury which arose out of and occurred in the course of his employment, and is entitled to receive appropriate compensation for whatever temporary total disability and/or permanent partial impairment which he experienced.

The award of the Full Industrial Board is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

Robertson, C.J. concurs.

Hoffman, J., Participating by designation, Dissents with Opinion.

## DISSENTING OPINION

HOFFMAN, J.[1] — The majority opinion correctly states the law that upon a review from the Industrial Board this court cannot weigh the evidence or determine the credibility of witnesses. The fact finding function rests with the Board and if there is evidence to support the Board's findings the award should be affirmed. Further, the burden rests upon the appellant to demonstrate that the decision of the Board is contrary to law.

The record herein contains ample evidence that the appellant had a preexisting condition of back pain; that the condition could at any time cause the symptom of sciatica leg paralysis about which appellant had previously complained; that appellant was performing his regular work duties and exercising no undue exertion; that his own chiropractor had released him from further treatment; and that the recurrence of the pain and disability arose when he fell over beside his bed in his own home at 1:30 A.M.

---

1. Hoffman, Judge, participating by designation.

Generally courts have denied compensation for death or injuries which occur during performance of the worker's regular duties when a preexisting condition has been shown to have been present and there was no showing of an unusual exertion. *U.S. Steel Corp. v. Dykes* (1958), 238 Ind. 599, 154 N.E.2d 111; *Chestnut v. Coca Cola* (1969), 145 Ind. App. 504, 251 N.E.2d 575; *City of Anderson v. Borton* (1961), 132 Ind. App. 684, 178 N.E.2d 904. The reason for so deciding has been based on the requirement that the claimed harm be related to the injury causally and not incidentally. As stated in Small, Workmen's Compensation Law of Indiana, § 6.2, at 110-11 (1950):

"There must be some substantial link running from the employment, or one of its incidents, through the accident to the particular harm for which compensation is sought. To prove the existence of that link, there must be a cause in fact, or 'but for' cause as a *sine qua non*. In addition, there must be either a direct or a proximate cause to be found in the employment. In other words, a claimant must establish that but for his employment, the accident would not have occurred. He must further establish that his employment either constituted the direct and exclusive cause for the harm complained of, or that other intervening causes were not of sufficient force to supersede the employment as the moving cause."

This court in *Chestnut v. Coca Cola, supra,* drew from *U.S. Steel Corp. v. Dykes, supra,* in the same context stating:

"We believe the doctrine of the *Dykes* case to be as folllows: If the Industrial Board specifically finds a pre-existing condition in the area of injury, then the Industrial Board must specifically find that the injury resulted from an unusual exertion in order to determine that an 'accident' occurred within the meaning of the statute.

"The underlying reasoning behind an 'unusual exertion' analysis rests on the desire of the court to find a more specific causal relationship between the injury complained of and the act which caused it arising out of and in the course of employment.

"As Chief Justice Bobbitt pointed out in *Dykes*, at pages 607-608 of 238 Ind., page 116 of 154 N.E.2d,

'The causal question here is: Was the inability of decedent's heart to meet the demands, i.e., the "coronary insufficiency", caused by a change, i.e., an increase in the work load beyond the heart's ability to function, or by a decrease in the heart's ability to meet an unchanged demand. The "cause" is that which has changed, not that which remains constant.'" (Footnote omitted.)

145 Ind. App. at 511, 251 N.E.2d at 579.

Moreover the determination of whether a causal relationship exists between the injury and the employment necessarily involves a question of fact drawn by the Board from the evidence. As stated in *Estey Piano Corporation v. Steffen* (1975), 164 Ind. App. 239, 328 N.E.2d 240, at 243:

"It is generally held that an accident arises out of the employment when there exists some causal nexus between the injury complained of and the duties or services performed. (Citations omitted.) In *Lasear, Inc. v. Anderson, supra*, the court explained:

'Causal relation is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the employment at the time of entering into it, or, when the facts show an incidental connection between the conditions under which the employee works and the injury.' 99 Ind. App. at 434, 192 N.E. at 765.

"It is therefore incumbent upon claimant to prove the causal relationship by substantial evidence of probative value."

In the case at bar the Full Industrial Board determined that no causal relationship existed between the employment and the disabling medical condition as a question of fact. In this regard there was sufficient evidence to support the finding. It should not be disturbed.

The majority relies on its "unexpected result theory" to conclude that only the injury itself must be unexpected and not the cause of the injury. Specifically an "accident" is said to occur even though everything preceding the injury was normal. Thus any preexisting illness the symptoms of which were manifest during the working hours of the day would have to be considered as arising "out of" and "in the course of" employment for purposes of compensation.

However this rationale would render a finding of cause useless.[2] Such contravenes the ruling of our Supreme Court in *U.S. Steel Corp. v. Dykes, supra,* where it is stated:

> "The mere showing that he was performing his usual routine everyday task when he suffered a heart attack does not establish a right to workmen's compensation because there was no event or happening beyond the mere employment itself." 238 Ind. at 613, 154 N.E.2d at 119.

Since the Industrial Board failed to find some untoward or unexpected event and since the majority relies solely on an unexpected result theory, nowhere to be found in *U.S. Steel Corp. v. Dykes, supra,* it becomes incumbent upon me to dissent. The finding of an unexpected cause relates to whether the accident arose "out of" and not just "in the course of" employment.

Having found no "unexpected cause" the decision of the Board should be affirmed.

NOTE—Reported at 366 N.E.2d 207.

---

2. *See generally,* Judge Buchanan's concurring opinion in *Estey Piano Corporation v. Steffen* (1975), 164 Ind. App. 239, 328 N.E.2d 240, 245.